ACCEPTED
04-14-00668-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/17/2015 4:23:37 PM
KEITH HOTTLE
CLERK

## AMENDED LIST OF APPENDICES

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/17/2015 4:23:37 PM
KEITH E. HOTTLE
Clerk

Appendix A    1994 Deed Recorded in the Official Records of Karnes County, Texas

Appendix B    Exhibit E-1 to Plaintiffs' Motion for Summary Judgment: 1992 Warranty Deed Recorded in the Official Records of Hays County, Texas

Appendix C    Exhibit I to Plaintiffs' Motion for Summary Judgment: Certified copy of Oil and Gas Lease executed on January 5, 2013 from Pamela Mika Wolf to West 17th and recorded in Volume 1095, Page 18 of the Official Records of Karnes County, Texas

Appendix D    Exhibit J to Plaintiffs' Motion for Summary Judgment: Certified copy of Oil and Gas Lease executed on January 5, 2013 from Thomas Mika to West 17th and recorded in Volume 1095, Page 18 of the Official Records of Karnes County, Texas

Appendix E    Exhibit N to Plaintiffs' Motion for Summary Judgment: Certified copy of the Form W-1 for Murphy Exploration & Production Company USA Whitfield East Unit Well No. 1 H

Appendix F    Exhibit O to Plaintiffs' Motion for Summary Judgment: Certified copy of the Form W-1 for Murphy Exploration & Production Company USA Whitfield West Unit Well No. 1 H

Appendix G    Exhibit P to Plaintiffs' Motion for Summary Judgment: Certified copy of Assignment of Oil and Gas Lease dated May 21, 2013 by and between West 17th Resources, LLC and Murphy Exploration and Production Company

Appendix H    Final Judgment dated August 28, 2014

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/17/2015 4:23:37 PM
KEITH E. HOTTLE
Clerk

Appendix A

STATE OF TEXAS      ¶      KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF KARNES      ¶

That we, ALOYS MIKA, IRENE MIKA, JOYCE MARIE MIKA PITZER, ARTHUR RAY MIKA, DENNIS CARL MIKA, VIRGINIA SUE MIKA DUBOSE, LESLIE BRYAN MIKA, BEVERLY JANE MIKA TANEL, CHARLENE ANN MIKA DAILEY, DOLORES FAYE MIKA LAVELLE, EVELYN RUTH MIKA, GERMAINE CAROL MIKA, NORMA LOUISE MIKA PRINCE, STEPHANIE ROSE MIKA and JACQUELYN GRACE MIKA, hereinafter called "Grantors", not joined herein by our respective spouses, if any, because the property herein conveyed constitutes a part and parcel of the separate property and estate of each of us and does not constitute any part of the homestead of any of us, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) cash, and other good and valuable consideration to us in hand paid by LUCIAN A. PAWELEK and wife, CARLEEN J. PAWELEK, the receipt of which is hereby acknowledged, have GRANTED, SOLD and CONVEYED, subject to the hereinafter mentioned exception, and by these presents do GRANT, SELL and CONVEY, subject to the hereinafter mentioned exception, unto

         LUCIAN A. PAWELEK
         151 HARCOURT
         SAN ANTONIO, BEXAR COUNTY, TEXAS   78223

         CARLEEN J. PAWELEK
         151 HARCOURT
         SAN ANTONIO, BEXAR COUNTY, TEXAS   78223

all of the following described real property situated in Karnes County, Texas, including any right, title and interest of Grantors, in and to highways, adjacent streets, alleys or rights-of-way, said real property being described as follows, to-wit:

     Being 290.69 acres of land, a part of the
     John J. Pickett Survey, Abstract No. 227,
     lying and being situated in Karnes County,
     Texas, about 10.7 miles Northeast of Karnes
     City, the county seat. The said 290.69 acre
     tract also being a part of that certain
     called 298.72 acre tract as described in a
     GIFT DEED from Mary Mika to Aloys Mika, et
     al, dated October 9, 1992, and recorded in
     Volume 639, Pages 124 et seq., of the
     Official Records of Karnes County, Texas.

-1-

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on



Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

The said 290.69 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a 5/8" steel pin set at a fence corner in the East boundary of the said John J. Pickett Survey, Abstract No. 227, and the West boundary of County Road No. 311, for the occupied Southeast corner of the called 298.72 acre tract and the Southeast corner of this 290.69 acre tract; the same being the occupied Northeast corner of the Edwin Janysek called 40.0 acre tract (Volume 541, Page 220, Deed Records, Karnes County, Texas), and being N. 01 degree 21 minutes E.-2296.8' from the approximate Southeast corner of the said John J. Pickett Survey, Abstract No. 227. (NOTE, the bearing and distance from the "survey" corner derived from office information for map location only)

THENCE: Along the South boundary of the called 298.72 acre tract with the following two (2) calls:

1. N. 89 degrees 30 minutes 00 seconds W.-2303.50', to a 5/8" steel pin set at a fence corner for the occupied Northwest corner of the Frank Janysek, Jr., called 50.0 acre tract (Volume 541, Page 216, Deed Records, Karnes County, Texas) and the occupied Northeast corner of the Fabian Pawelek called 40.0 acre tract (Volume 382, Page 129, Deed Records, Karnes County, Texas), and
2. N. 89 degrees 22 minutes 23 seconds W.-1518.32', to a large creosote post at a fence corner in the East boundary of the Zefred Alex Kruciak, et ux, called 162.9 acre tract (Volume 197, Page 185, Deed Records, Karnes County, Texas), for the occupied Southwest corner of the called 298.72 acre tract and the Southwest corner of this 290.69 acre tract; the same being the occupied Northwest corner of the Fabian Pawelek called 40.0 acre tract.

THENCE: N. 00 degrees 39 minutes 00 seconds E. along the West boundary of the called 298.72 acre tract; the same being the East boundary of the called 162.9 acre tract and of the Zefred Alex Kruciak, et ux, called 18.2 acre tract (Volume 220, Page 393, Deed Records, Karnes County, Texas), a distance of 1898.59' to a 5/8" steel pin set a point of intersection with the Southeast right-of-way boundary of F. M. Highway No. 1354, and being on a curve, for a corner of this 290.69 acre tract.

THENCE: Along the Southeast right-of-way boundary of said F. M. Highway No. 1354 and curve to the left (Long Chord bears N. 25 degrees 03 minutes 56 seconds E.-201.46') whose radius is 244.63' and whose central angle for this part is 48 degrees 37 minutes 53 seconds, an arc distance of 207.64' to a 5/8" steel pin set at the P.T. of said curve.

-2-

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _____
Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

THENCE: N. 00 degrees 45 minutes 00 seconds E. along the East right-of-way boundary of said F. M. Highway No. 1354, a distance of 1114.25' to a 5/8" steel pin set at the P.C. of a curve to the right.

THENCE: Along the Northeasterly boundary of County Road No. 312 and said curve to the right (Long Chord bears N. 45 degrees 57 minutes 30 seconds E.-214.31') whose radius is 150.99' and whose central angle is 90 degrees 25 minutes 00 seconds, an arc distance of 238.27' to a 5/8" steel pin set at the P.T. of said curve.

THENCE: S. 88 degrees 50 minutes 00 seconds E. along the established South boundary of said County Road No. 312, a distance of 3625.45' to a 5/8" steel pin set at a point of intersection with the West fenced boundary of said County Road No. 311, and being in the East boundary of the said John J. Pickett Survey, Abstract No. 227, for the Northeast corner of this 290.69 acre tract.

THENCE: Along the East boundary of the said John J. Pickett Survey, Abstract No. 227 and of the called 298.72 acre tract; the same being the West boundary of said County Road No. 311 with the following two (2) calls:

1. S. 01 degree 33 minutes 00 seconds W.-1491.06', set a 5/8" steel pin at an angle point, and
2. S. 01 degree 12 minutes 22 seconds W.-1816.89', to the point of BEGINNING and CONTAINING 290.69 acres of land.

The bearings recited herein are based on a course of NORTH along the East boundary of County Road No. 294, and the West boundary of the Bennie A. Janysek, et al, 56.46 acre tract (Volume 563, Page 840, Deed Records, Karnes County, Texas).

Surveyed on the ground on October 31 and November 14, 1994, under the supervision of Syl. Dworaczyk, Jr., Registered Professional Land Surveyor No. 1272 (CHAS. KLUMPP, JR. & CO. - Karnes City, Texas)

This conveyance is subject, however, to the Easement and Right-of-Way shown in instrument from Mary Mika and husband, Felix Mika, to Central Power and Light Company, dated June 25, 1953, recorded in Volume 215, Page 607, of the Deed Records of Karnes County, Texas.

TO HAVE AND TO HOLD the above described premises, subject to the above exception, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said LUCIAN A. PAWELEK and wife, CARLEEN J. PAWELEK, their heirs and

-3-

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on

Carol Swize, County Clerk
Karnes County, Texas
By_____Deputy

MCW/m)

assigns, forever; and we do hereby bind ourselves, our heirs, executors and administrators, to WARRANT and FOREVER DEFEND, all and singular the said premises, subject to the above exception, unto the said LUCIAN A. PAWELEK and wife, CARLEEN J. PAWELEK, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

EXECUTED this the 15 day of Dec , 1994, BUT EFFECTIVE AS OF DECEMBER 31, 1994.

_____
ALOYS MIKA

_____
CHARLENE ANN MIKA DAILEY

_____
IRENE MIKA

_____
DOLORES FAYE MIKA LAVELLE

_____
JOYCE MARIE MIKA PITZER

_____
EVELYN RUTH MIKA

_____
ARTHUR RAY MIKA

_____
GERMAINE CAROL MIKA

_____
DENNIS CARL MIKA

_____
NORMA LOUISE MIKA PRINCE

_____
VIRGINIA SUE MIKA DUBOSE

_____
STEPHANIE ROSE MIKA

_____
LESLIE BRYAN MIKA

_____
JACQUELYN GRACE MIKA

_____
BEVERLY JANE MIKA TANEL

STATE OF TEXAS

COUNTY OF Bexar

This instrument was acknowledged before me on December 28, 1994, by ALOYS MIKA.



_____
NOTARY PUBLIC, STATE OF TEXAS

-4-

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on 12-29-15
Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

87

MCW/mj

STATE OF TEXAS     |

COUNTY OF _Travis_     |

This instrument was acknowledged before me on _DEC 19_, 1994, by IRENE MIKA.

_Carolyn M. Crowley_
NOTARY PUBLIC, STATE OF TEXAS

STATE OF TEXAS     |

COUNTY OF _Bexar_     |

This instrument was acknowledged before me on _DECEMBER 28_, 1994, by JOYCE MARIE MIKA PITZER.

ROSEANNA QUINLAN
Notary Public, State of Texas
My Commission Expires 11/15/98

_Roseanna Quinlan_
NOTARY PUBLIC, STATE OF TEXAS

STATE OF NEW YORK     |

COUNTY OF _____     |

This instrument was acknowledged before me on _____, 1994, by ARTHUR RAY MIKA.

_____
NOTARY PUBLIC, STATE OF NEW YORK

STATE OF TEXAS     |

COUNTY OF _____     |

This instrument was acknowledged before me on _____, 1994, by DENNIS CARL MIKA.

_____
NOTARY PUBLIC, STATE OF TEXAS

-5-

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on 0X-09-13

Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

STATE OF TEXAS |            HCW/mj

COUNTY OF _Live Oak_ |

    This instrument was acknowledged before me on _January 12_ 1995, by VIRGINIA SUE MIKA DUBOSE.

DONNA L. WOLFE
MY COMMISSION EXPIRES
March 1, 1997

_____
NOTARY PUBLIC, STATE OF TEXAS

STATE OF ARIZONA |

COUNTY OF _____ |

    This instrument was acknowledged before me on _____, 1994, by LESLIE BRYAN MIKA.

_____
NOTARY PUBLIC, STATE OF ARIZONA

STATE OF TEXAS |

COUNTY OF _____ |

    This instrument was acknowledged before me on _____, 1994, by BEVERLY JANE MIKA TANEL.

_____
NOTARY PUBLIC, STATE OF TEXAS

STATE OF TEXAS |

COUNTY OF _Travis_ |

    This instrument was acknowledged before me on _Dec, 15_, 1994, by CHARLENE ANN MIKA DAILEY.

BETTY BEHNEY
MY COMMISSION EXPIRES
July 10, 1998

_____
NOTARY PUBLIC, STATE OF TEXAS

-6-

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on 08-20-13

Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

89

MCW/mj

STATE OF CALIFORNIA     ❧

COUNTY OF _____ ❧

    This instrument was acknowledged before me on _____,

1994, by DOLORES FAYE MIKA LAVELLE.

_____
NOTARY PUBLIC, STATE OF CALIFORNIA

STATE OF TEXAS     ❧

COUNTY OF *Travis*     ❧

    This instrument was acknowledged before me on 16th December

1994, by EVELYN RUTH MIKA.

> ERMA C. MARTINEZ
> NOTARY PUBLIC,
> STATE OF TEXAS
> Comm. [illegible]

_____
NOTARY PUBLIC, STATE OF TEXAS

STATE OF TEXAS     ❧

COUNTY OF *Bexar*     ❧

    This instrument was acknowledged before me on Jan. 3.

1995, by GERMAINE CAROL MIKA.

> BARBARA A. BELL
> Notary Public, State of Texas
> My Comm. Exp. 05/11/98

_____
NOTARY PUBLIC, STATE OF TEXAS

STATE OF COLORADO     ❧

COUNTY OF _____ ❧

    This instrument was acknowledged before me on _____,

1994, by NORMA LOUISE MIKA PRINCE.

_____
NOTARY PUBLIC, STATE OF COLORADO

-7-

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic
copy of the original record now in my lawful cust-
ody and possession, as the same is recorded in
the Official Public records in my office, and I
hereby certify on 08-29-13
Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

90

MCW/mj

STATE OF TEXAS      ‖

COUNTY OF _____ ‖

     This instrument was acknowledged before me on _____,

1994, by STEPHANIE ROSE MIKA.

_____
NOTARY PUBLIC, STATE OF TEXAS

STATE OF TEXAS      ‖

COUNTY OF _Travis_      ‖

     This instrument was acknowledged before me on _16th December_,

1994, by JACQUELYN GRACE MIKA

ERMA C. MARTINEZ
NOTARY PUBLIC,
STATE OF TEXAS
Commission Expires

_____
NOTARY PUBLIC, STATE OF TEXAS

VOL 668 PAGE 405

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _____

Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

91



WARRANTY DEED

REGISTERED

42354

ALOYS MIKA, ET AL

TO

LUCIAN A. PAWELEK, ET UX

LONG AND WHITEHEAD
ATTORNEYS AT LAW
PROFESSIONAL BUILDING
KARNES CITY, TEXAS 78118

Filed For Record the ____ day of ____ A.D. 1995
At ____ o'clock ____ M
ELIZABETH SWIZE
Clerk County Court, Karnes County, Texas
By ____ Deputy

VOL 668 PAGE 406



RECORDED IN OFFICIAL RECORDS
FILE DATE Feb. 1, 1995
FILE TIME 1:15 O'CLOCK P M
VOL 668 PAGE 398
RECORDING DATE
Feb. 1, 1995
ELIZABETH SWIZE
COUNTY CLERK, KARNES COUNTY
BY Marilyn Bednoz

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on 08-29-13

Carol Swize, County Clerk
Karnes County, Texas
By ____ Deputy


COUNTY COURT OF KARNES COUNTY TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/17/2015 4:23:37 PM
KEITH E. HOTTLE
Clerk

# Appendix B

COPY $57.00
CK# 17173

942 · 539

326252

## WARRANTY DEED WITH VENDOR'S LIEN

Date:          July 29, 1992

Grantor:       IRENE MIKA, Individually and as Independent Executrix of the Estate of PROSPER A. MIKA, Deceased, and IRENE M. MIKA, as Trustee of the PROSPER A. MIKA TRUST

Grantor's Mailing Address (including county):

P.O. Box 1016 BUDA TEXAS 78610
in HAYS County

Grantee:       BARRY S. IRWIN and wife, MARY J. IRWIN

Grantee's Mailing Address (including county):

314 LIVE OAK DRIVE BUDA, TEXAS 78610
in Hays County

Consideration:

$10.00 cash and other good and valuable consideration to Grantor paid by Grantee, the receipt of which is hereby acknowledged, the balance of the consideration in the sum of NINETY-FIVE THOUSAND, TWO HUNDRED AND NO/100 ($95,200.00) DOLLARS is at the special instance and request of Grantee paid to Grantor by MILTEX MORTGAGE, INC., and the indebtedness is evidenced by a note of even date herewith in the principal amount of NINETY-FIVE THOUSAND, TWO HUNDRED AND NO/100 ($95,200.00) DOL-LARS, executed by Grantee herein and payable to the order of MILTEX MORTGAGE, INC., 11911 Burnet Rd., STE #205, Austin, TX 78758, or order, as therein provided, bearing interest at the rates therein specified, providing for acceleration of maturity in event of default and for attorney's fees, the payment of which note is secured by the vendor's lien herein retained, and is additionally secured by a deed of trust of even date herewith to Paul Schwab, Trustee.

Property (including any improvements):

Lot Two (2), Block Eight (8), MOUNTAIN CITY OAKS, SECTION TWO, a subdivision in Hays County, Texas, according to the map or plat thereof, of record in Volume 2, Page 109, Plat Records of Hays County, Texas.

Reservations from and Exceptions to Conveyance and Warranty:

This conveyance is made and accepted subject to the following matters, to the extent same are in effect at this time: Boundary line agreement recorded in Volume 695, pages 867-870, Real Property Records of Hays County, Texas, and any and all restrictions, covenants, conditions and easements, if any, relating to the hereinabove described property, but only to the extent they are still in effect, shown of record in the hereinabove mentioned County and State, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, but only to the extent they are still in effect, relating to the hereinabove described property.

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs,

CERTIFIED TO BE A TRUE AND CORRECT COPY
LIZ Q. GONZALEZ, County Clerk
Hays County

OFFICIAL PUBLIC RECORDS
Hays County, Texas       HCK/1mm/13,065

1

Exhibit E-1
West 17th MPSI



942 · 540

executors, administrators or assigns forever. Grantor hereby binds Grantor and Grantor's heirs, executors and administrators, to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to warranty.

It is expressly agreed that the VENDOR'S LIEN, as well as the SUPERIOR TITLE in and to the above described premises, is retained against the above described property, premises and improvements until the above described note and all interest thereon are fully paid, when this deed shall become absolute. The said VENDOR'S LIEN and SUPERIOR TITLE herein retained are hereby transferred and assigned to MILTEX MORTGAGE, INC., its successors and assigns, the payee named in said note.

When the context requires, singular nouns and pronouns include the plural.

EXECUTED this 29th day of July, 1992, to be effective as of the date first hereinabove shown.

_____
IRENE MIKA, Individually and as
Independent Executrix of the Estate
of PROSPER A. MIKA, Deceased,

_____
IRENE M. MIKA, Trustee of the PROSPER
A. MIKA TRUST

THE STATE OF TEXAS §
                    §
COUNTY OF HAYS §

This instrument was acknowledged before me on the 7th day of August, 1992, by IRENE MIKA, Individually and as Independent Executrix of the Estate of PROSPER A. MIKA, Deceased, and IRENE M. MIKA, as Trustee of the PROSPER A. MIKA TRUST.

_____
NOTARY PUBLIC - STATE OF TEXAS

GUERRY JORDON
Notary Public
STATE OF TEXAS
My Comm. Exp. Nov. 30, 1992

CERTIFIED TO BE A TRUE AND
CORRECT COPY
LIZ Q. GONZALEZ, County Clerk
Hays County

Prepared in the Law Office of:
H. C. Kyle, III
KYLE, WALKER & GOSSETT
East Side of Courthouse Square,
P. O. Box 1708
San Marcos, Texas 78667

942 · 541

STATE OF TEXAS
COUNTY OF HAYS
I hereby certify that this instrument was FILED on
the date and at the time stamped hereon by me and was duly
RECORDED, in the Volume and Page of the named RECORDS
of Hays County, Texas, as stamped hereon by me.

AUG 13 1992



COUNTY CLERK
HAYS COUNTY, TEXAS

'92 AUG 13 PM 3 35

FILED
HAYS COUNTY, TEXAS

COUNTY CLERK

FILED
IN THE OFFICE
OF THE DISTRICT CLERK

MAR 2 7 2014

AT 1:10 P.M. O'CLOCK
DENISE RODRIGUEZ
KARNES COUNTY DISTRICT CLERK

I, LIZ Q. GONZALEZ, COUNTY CLERK.
HAYS COUNTY, TEXAS, do hereby certify that this is
a true and correct copy as same appears of record
in my office. Witness my hand and seal of office on:

December 19 2013
LIZ Q. GONZALEZ
HAYS COUNTY CLERK
BY DEPUTY



FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/17/2015 4:23:37 PM
KEITH E. HOTTLE
Clerk

Appendix C

# OIL AND GAS LEASE

THIS AGREEMENT is executed, and to be effective from, the **5th** day of **January**, 2012 between PAMELA MIKA WOLF, Lessor (whether one or more), whose mailing address is 201 Nuthatch Drive, Buda, Texas 78160, and WEST 17TH RESOURCES LLC, whose mailing address is 1707 ½ Post Oak Boulevard, Houston, Texas 77056, Lessee:

1. Lessor, in consideration of Ten Dollars ($10.00) and other valuable consideration paid by Lessee, the receipt and sufficiency of which are hereby acknowledged and confessed, and of the covenants and agreements of lessee hereinafter contained, does hereby grant, lease and let unto lessee, the land covered hereby, for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas, condensate, sulphur and all other minerals produced therewith, together with the right to make surveys on said land, lay pipe lines, establish and utilize facilities for surface or subsurface disposal of salt water, construct roads and bridges, dig canals, build tanks and other structures on said land, necessary or useful in lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto. The land covered hereby, herein called "said land," is located in the County of Karnes, State of Texas, and is described as follows:

> That entire tract of land out of the John J. Pickett Survey, A-227, in Karnes County, Texas described in Deed dated December 15, 1994 executed by Aloys Mika et al in favor of Lucian A. Pawelek et ux and recorded in Volume 668, Page 398 of the Official Records of Karnes County, Texas, said to contain 290.69 acres, more or less.

This lease also covers and includes all land, if any, contiguous or adjacent to or adjoining the land above described and (a) owned or claimed by Lessor by limitation, prescription, possession, reversion or unrecorded instrument or (b) as to which Lessor has a preference right of acquisition. Lessor agrees to execute any supplemental instrument requested by lessee for a more complete or accurate description of said land. For the purpose of determining the amount of any bonus or other payment hereunder, said land shall be deemed to contain 290.69 acres, whether actually containing more or less, and the above recital of acreage in any tract shall be deemed to be the true acreage thereof. Lessor accepts the bonus as lump sum consideration for this lease and all rights and options hereunder.

2. This lease shall remain in force for a term of One (1) year from the date hereof, hereinafter called "primary term" and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

3. As royalty, Lessee covenants and agrees: (a) To deliver to the credit of Lessor, in the pipeline to which Lessee may connect its wells, the equal TWENTY-FIVE PERCENT (25%) part of all oil, condensate or other liquid hydrocarbons produced and saved by Lessee from said land, or from time to time, at the option of Lessee, to pay Lessor the average monthly posted market price of such TWENTY-FIVE PERCENT (25%) part of such oil, condensate or other liquid hydrocarbons as of the month when sold of the amount realized from the sale of such oil, condensate or other liquid hydrocarbons, whichever is greater; (b) To pay Lessor on gas and casinghead gas produced from said land (1) when sold by lessee, the TWENTY-FIVE PERCENT (25%) of the amount realized by lessee, computed at the mouth of the, or (2) when used by lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of the TWENTY-FIVE PERCENT (25%) of such gas and casinghead gas; (c) To pay Lessor on all other minerals mined and marketed or utilized by lessee from said land, one-tenth either in kind or value at the well or mine at lessee's election, except that on sulphur mined and marketed the royalty shall be one dollar ($1.00) per long ton. If, at the expiration of the primary term or at any time or times thereafter, there is any well on said land or on lands with which said land or any portion thereof has been pooled, capable of producing oil or gas, and all such wells are shut-in, this lease shall, nevertheless, continue in force as though operations were being conducted on said land for so long as said wells are shut-in, and thereafter this lease may be continued in force as if no shut-in had occurred. Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee. If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of ninety consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, lessee shall pay or tender, by check or draft of lessee, as royalty, a sum equal to fifty dollars ($50.00) for each acre of land then covered hereby. Lessee shall make like payments or tenders at or before the end of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions of this paragraph. Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid under this lease if the wells were producing, and may be delivered to Lessor at the above address, regardless of ownership or changes in the ownership of shut-in royalty. If at any time that lessee pays or tenders shut-in royalty, two or more parties are, or claim to be, entitled to receive same, lessee may, in lieu of any other method of payment herein provided, pay or tender such shut-in royalty, in the manner above specified, either jointly to such parties or separately to each in accordance with their respective ownerships thereof, as lessee may elect. Any payment hereunder may be made by check or draft of lessee deposited in the mail or delivered to Lessor or the party entitled to receive payment on or before the last date for payment. Nothing herein shall impair lessee's right to release the lease or a portion thereof as provided in paragraph 5 hereof. In the event of assignment of this lease in whole or in part, liability for payment hereunder shall rest exclusively on the then owner or owners of this lease, severally as to acreage owned by each.

4. Lessee is hereby granted the right, at its option, to pool or unitize any land covered by this lease with any other land covered by this lease, and/or with any other land, lease, or leases, as to any or all minerals or horizons, so as to establish units containing not more than 80 surface acres, plus 10% acreage tolerance; provided, however, units may be established as to any one or more horizons, or existing units may be enlarged as to any one or more horizons, so as to contain as many as 640 surface acres plus 10% acreage tolerance, if limited to one or more of the following: (1) gas, other than casinghead gas, (2) liquid hydrocarbons (condensate) which are not liquids in the subsurface reservoir, (3) minerals produced from wells classified as gas wells by the conservation agency having jurisdiction. If larger units than any of those herein permitted, either at the time established, or after enlargement, are required under any governmental rule or order, for the drilling or operation of a well at a regular location, or for obtaining maximum allowable from any well to be drilled, drilling, or already drilled, any such unit may be established or enlarged to conform to the size required by such governmental order or rule. Lessee shall exercise said option as to each desired unit by executing an instrument identifying such unit and filing it for record in the public office in which this lease is recorded. Each of said options may be exercised by lessee at any time and from time to time while this lease is in force, and whether before or after production has been established either on said land, or on the portion of said land included in the unit, or on other land unitized therewith. A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be mineral, royalty, or leasehold interests in lands within the unit which are not effectively pooled or unitized. Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted upon said land under this lease. There shall be allocated to the land covered by this lease within each such unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) that proportion of the total production of unitized minerals from the unit, after deducting any used in lease or unit operations, which the number of surface acres in such land (or in each such separate tract) covered by this lease within the unit bears to the total number of surface acres in the unit, and the production so allocated shall be considered for all purposes, including payment or delivery of royalty, overriding royalty and any other payments out of production, to be the entire production of unitized minerals from the land to which allocated in the same manner as though produced therefrom under the terms of this lease. The owner of the reversionary estate of, any term royalty or mineral estate agrees that the accrual of royalties pursuant to this paragraph or of shut-in royalties from a well on the unit shall

**CERTIFIED COPY CERTIFICATE**
**STATE OF TEXAS**
**COUNTY OF KARNES**
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on **September 9, 2013**

Carol Swize, County Clerk
Karnes County, Texas

By _____ Deputy

Exhibit 1
West 17th MPSJ

satisfy any limitation of term requiring production of oil or gas. The formation of any unit hereunder which includes land not covered by this lease shall not have the effect of exchanging or transferring any interest under this lease (including, without limitation, any shut-in royalty which may become payable under this lease) between parties owning interests in land covered by this lease and parties owning interests in land not covered by this lease. Neither shall it impair the right of lessee to release as provided in paragraph 5 hereof, except that lessee may not so release as to lands within a unit while there are operations thereon for unitized minerals unless all pooled leases are released as to lands within the unit. At any time while this lease is in force lessee may dissolve any unit established hereunder by filing for record in the public office where this lease is recorded a declaration to that effect, if at that time no operations are being conducted thereon for unitized minerals. Subject to the provisions of this paragraph 4, a unit once established hereunder shall remain in force so long as any lease subject thereto shall remain in force. If this lease now or hereafter covers separate tracts, no pooling or unitization of royalty interests as between any such separate tracts is intended or shall be implied or result merely from the inclusion of such separate tracts within this lease but lessee shall nevertheless have the right to pool or unitize as provided in this paragraph 4 with consequent allocation of production as herein provided. As used in this paragraph 4, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises.

For any well that is drilled as a "horizontal" well, as such term is defined by the Railroad Commission of Texas, and such well is then or thereafter classified as an oil well, lessee may form a pooled oil unit that does not exceed 640 surface acres. For any well that is drilled as a "horizontal" well, as such term is defined by the Railroad Commission of Texas, and such well is then or thereafter classified as a gas well, lessee may form a pooled gas unit that does not exceed 640 surface acres plus a tolerance of 10% of 640 acres. In addition, such horizontal gas production unit may include 40 acres for each 827 feet of horizontal drainhole. Units may be established as to any one or more horizontal wells, whether classified as oil or gas and existing units may be amended or enlarged if necessary to comply with the provisions contained herein. For the purpose of determining the point in time when the right to create a pooled unit for a horizontal well under this provision may be exercised, the granting of a permit by the Railroad Commission of Texas for the drilling of a well and the commencement of drilling operation thereon shall be treated as if a well had already been completed and classified as a gas well or an oil well as specified by the operator in the naming of the unit in the declaration filed in the office of the county clerk where the land, or a portion thereof, is located.

5. Lessee may at any time and from time to time execute and deliver to Lessor or file for record a release or releases of this lease as to any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations, as to the released acreage or interest.

6. Whenever used in this lease the word "operations" shall mean operations for and any of the following: drilling, testing, completing, reworking, re-completing, deepening, plugging back or repairing of a well in search for or in an endeavor to obtain production of oil, gas, sulphur or other minerals, excavating a mine, production of oil, gas, sulphur or other mineral, whether or not in paying quantities. If this lease covers an interest in the oil, gas or other minerals in and under the leased premises that is less than the entire fee simple estate, and a cotenant of Lessor or Lessee in said leased premises conducts operations on, or produces oil, gas or other minerals from, said leased premises or lands pooled therewith, such operations or production shall be deemed operations or production, as the case may be, by Lessee under the terms hereof, whether such operations are conducted or production obtained during or after the primary term thereof and shall cause this lease to remain in force and effect as if such operations were being conducted by Lessee or such production was being obtained from wells operated by Lessee, regardless of whether Lessee has a contractual agreement with such cotenant concerning such operations or production or whether Lessee participates in or pays Lessee's share of the costs of such operations. If such cotenant establishes production as set forth in this paragraph, Lessee shall pay to Lessor the fractional royalty set forth in the royalty provision(s) of this lease on all such production, proportionately reduced to Lessor's undivided interest in the leased premises (and pooled unit, if applicable), or if such production is shut in, Lessee may pay shut-in royalties according to the terms hereof.

7. Lessee shall have the use, free from royalty, of oil and gas produced from said land in all operations hereunder. Lessee shall have the right at any time to remove all machinery and fixtures placed on said land, including the right to draw and remove casing. Lessee shall pay for damages caused by its operations to growing crops and timber on said land.

8. The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any mineral or horizon. All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns. No change or division in the ownership of said land, royalties, or other moneys, or any part thereof, howsoever effected, shall increase the obligations or diminish the rights of lessee, including, but not limited to, the location and drilling of wells and the measurement of production. Notwithstanding any other actual or constructive knowledge or notice thereof of or to lessee, its successors or assigns, no change or division in the ownership of said land or of the royalties, or other moneys, or the right to receive the same, howsoever effected, shall be binding upon the then record owner of this lease until thirty (30) days after there has been furnished to such record owner at his or its principal place of business by Lessor or lessor's heirs, successors, or assigns, notice of such change or division, supported by either originals or duly certified copies of the instruments which have been properly filed for record and which evidence such change or division, and of such court records and proceedings, transcripts, or other documents as shall be necessary in the opinion of such record owner to establish the validity of such change or division. If any such change in ownership occurs by reason of the death of the owner, lessee may, nevertheless pay or tender such royalties, or other moneys, or part thereof, to the credit of the decedent in a depository bank provided for above.

9. In the event Lessor considers that lessee has not complied with all its obligations hereunder, both express and implied, Lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by Lessor. The service of said notice shall be precedent to the bringing of any action by Lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee. Neither the service of said notice nor the doing of any acts by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligations hereunder. If this lease is cancelled for any cause, it shall nevertheless remain in force and effect as to (1) sufficient acreage around each well as to which there are operations to constitute a drilling or maximum allowable unit under applicable governmental regulations, (but in no event less than forty acres), such acreage to be designated by lessee as nearly as practicable in the form of a square centered at the well, or in such shape as then existing spacing rules require; and (2) any part of said land included in a pooled unit on which there are operations. Lessee shall also have such easements on said land as are necessary to operations on the acreage so retained.

10. Lessor hereby warrants and agrees to defend title to said land against the claims of all persons whomsoever claiming by, through or under Lessor, but not otherwise. Lessor's rights, and interests hereunder shall be charged primarily with any mortgages, taxes or other liens, or interest and other charges on said land, but Lessor agrees that lessee shall have the right at any time, if lessor is in default in payment of any such obligation, to pay or reduce same for Lessor, either before or after maturity, and be subrogated to the rights of the holder thereof and to deduct amounts so paid from royalties or other payments payable or which may become payable to Lessor and/or assigns under this lease. If this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether lessor's interest is herein specified or not), or no interest therein, then the royalties and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by Lessor) shall be paid out of the royalty herein provided. This lease shall be binding upon each party who executes it without regard

**CERTIFIED COPY CERTIFICATE**
**STATE OF TEXAS**
**COUNTY OF KARNES**
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _September 9, 2013_

Carol Swize, County Clerk
Karnes County, Texas

By_____ Deputy

to whether it is executed by all those named herein as Lessor.

11. If, while this lease is in force, at, or after the expiration of the primary term hereof, it is not being continued in force by reason of the shut-in well provisions of paragraph 3 hereof, and lessee is not conducting operations on said land by reason of (1) any law, order, rule or regulation, (whether or not subsequently determined to be invalid) or (2) any other cause, whether similar or dissimilar, (except financial) beyond the reasonable control of lessee, the primary term hereof shall be extended until the first anniversary date hereof occurring ninety (90) or more days following the removal of such delaying cause, and this lease may be extended thereafter by operations as if such delay had not occurred.

12. In the event a portion or portions of the land herein leased is pooled or unitized with other lands so as to form a pooled unit or units in accordance with the provisions of Paragraph 4 hereof, operations on, completion of a well upon, or production from such unit or units will not maintain this lease in force commencing on the third anniversary after the expiration of the primary term hereof as to the land not included in such unit or units. Commencing on the third anniversary after the end of the primary term, this lease shall also terminate as to all stratum that lie below the base of the formation that is then producing, provided, however, that if Lessee is then engaged in drilling operations on the subject land or on land with which the subject land has been pooled, or has been engaged in such operations within the 90-day period prior thereto, the termination to be effectuated under this paragraph, both as to lands outside the pooled unit and below the base of the producing formation, shall be delayed until 90 days after the cessation of such operation, provided further, that if within such 90-day period following the cessation of such operation, Lessee commences additional drilling operations on another well, such terminations shall be further delayed until 90 days after the cessation of such subsequent drilling operation and such additional successive drilling operations as may be undertaken without an interruption of more than 90 days.

13. Lessee agrees that payments for royalty on oil and gas reserved by Lessor herein and payable to Lessor under the terms of this lease will be paid to Lessor monthly as the production from said lease or any unit containing a part of said lease is sold, and that the first payment for Lessor's said royalty will be paid to Lessor within ninety (90) days after the sale of any such production from the leased premises or unit, but this provision shall not apply to the sale of products saved in testing the well before the official Railroad Commission potential test.

14. Lessee shall build and maintain fences around its slush and drainage pits and tank batteries so as to protect livestock against loss, damage or injury; and, upon completion or abandonment of any well or wells, Lessee shall fill and level off all slush pits and locations and completely clean up the drilling site of all rubbish thereon, and Lessee further agrees and will at Lessor's option level all roads and fill all road ditches constructed by Lessee on said premises immediately when such roads cease to be used in connection with Lessee's operations.

15. Lessee will indemnify, defend and hold harmless Lessor, his heirs, successors and assigns, from any and all losses, costs, damages, liabilities, claims, suits, actions, proceedings, assessments, fines and expenses (including costs of court and reasonable attorneys' fees) on account of actual or claimed injuries to or death of persons, or actual or claimed damages to property, including the lands and the property of Lessee and Lessor, or any condition that violates any law or permit, arising out of, resulting from, or in any way connected with regardless of the cause thereof.

16. Notwithstanding anything contained herein to the contrary, if, at the expiration of the primary term thereof, this lease is not being maintained in effect in any manner provided for herein, including but not limited to operations upon or production from the leased premises or on lands pooled therewith, Lessee, its successors and/or assigns, shall have the exclusive right and option to extend the primary term thereof as to the lands then covered hereby or any portion thereof chosen by Lessee, for an additional period of one (1) year, such option to be exercised and evidenced by the payment or tender to Lessor, on or before said date, of a sum equal to __$1,900__ per net mineral acre to be covered by the extension.

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

By: _Pamela Mika Wolf_
PAMELA MIKA WOLF

## ACKNOWLEDGEMENT

STATE OF TEXAS          §

COUNTY OF KARNES     §

This instrument was acknowledged before me on the 5th day of January 2013 by **Pamela Mika Wolf**.

HANNAH KAHLENE CRAFT
Notary Public, State of Texas
My Commission Expires
July 27, 2016

_Hannah Kahlene Craft_ Notary Public,
State of Texas
Notary's name:
(Printed): _Hannah Kahlene Craft_
Notary's commission expires: 07/27/16

**CERTIFIED COPY CERTIFICATE**
**STATE OF TEXAS**
**COUNTY OF KARNES**
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _September 9, 2013_
Carol Swize, County Clerk
Karnes County, Texas

By _Nerera Villanueva_ Deputy

00118906 BK OR VOL 1095 PG 25

Filed for Record in:
Karnes County

On: Jan 09,2013 at 01:18P

As a:
Recording Official Record

Document Number:        00118906

Amount:                    24.00

      Receipt Number - 62234
              By,
        Elizandra Garcia

STATE OF TEXAS           COUNTY OF KARNES
      I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
      Karnes County
as stamped hereon by me.
Jan 09,2013


              Carol Swize, Karnes County Clerk
              Karnes County

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic
copy of the original record now in my lawful custody
and possession, as the same is recorded in
the Official Public records in my office, and I
hereby certify on September 9, 2013
        Carol Swize, County Clerk
        Karnes County, Texas

By _____ Deputy





FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/17/2015 4:23:37 PM
KEITH E. HOTTLE
Clerk

Appendix D

# OIL AND GAS LEASE

THIS AGREEMENT is executed, and to be effective from, the 5th day of January, 2012 between THOMAS MIKA, Lessor (whether one or more), whose mailing address is 201 Nuthatch Drive, Buda, Texas 78160, and WEST 17TH RESOURCES LLC, whose mailing address is 1707 ½ Post Oak Boulevard, Houston, Texas 77056, Lessee:

1. Lessor, in consideration of Ten Dollars ($10.00) and other valuable consideration paid by Lessee, the receipt and sufficiency of which are hereby acknowledged and confessed, and of the covenants and agreements of lessee hereinafter contained, does hereby grant, lease and let unto lessee, the land covered hereby, for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas, condensate, sulphur and all other minerals produced therewith, together with the right to make surveys on said land, lay pipe lines, establish and utilize facilities for surface or subsurface disposal of salt water, construct roads and bridges, dig canals, build tanks and other structures on said land, necessary or useful in lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto. The land covered hereby, herein called "said land," is located in the County of Karnes, State of Texas, and is described as follows:

> That entire tract of land out of the John J. Pickett Survey, A-227, in Karnes County, Texas described in Deed dated December 15, 1994 executed by Aloys Mika et al in favor of Lucian A. Pawelek et ux and recorded in Volume 668, Page 398 of the Official Records of Karnes County, Texas, said to contain 290.69 acres, more or less.

This lease also covers and includes all land, if any, contiguous or adjacent to or adjoining the land above described and (a) owned or claimed by Lessor by limitation, prescription, possession, reversion or unrecorded instrument or (b) as to which Lessor has a preference right of acquisition. Lessor agrees to execute any supplemental instrument requested by lessee for a more complete or accurate description of said land. For the purpose of determining the amount of any bonus or other payment hereunder, said land shall be deemed to contain 290.69 acres, whether actually containing more or less, and the above recital of acreage in any tract shall be deemed to be the true acreage thereof. Lessor accepts the bonus as lump sum consideration for this lease and all rights and options hereunder.

2. This lease shall remain in force for a term of One (1) year from the date hereof, hereinafter called "primary term" and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

3. As royalty, Lessee covenants and agrees: (a) To deliver to the credit of Lessor, in the pipeline to which Lessee may connect its wells, the equal TWENTY-FIVE PERCENT (25%) part of all oil, condensate or other liquid hydrocarbons produced and saved by Lessee from said land, or from time to time, at the option of Lessee, to pay Lessor the average monthly posted market price of such TWENTY-FIVE PERCENT (25%) part of such oil, condensate or other liquid hydrocarbons as of the month when sold of the amount realized from the sale of such oil, condensate or other liquid hydrocarbons, whichever is greater; (b) To pay Lessor on gas and casinghead gas produced from said land (1) when sold by lessee, the TWENTY-FIVE PERCENT (25%) of the amount realized by lessee, computed at the mouth of the, or (2) when used by lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of the TWENTY-FIVE PERCENT (25%) of such gas and casinghead gas; (c) To pay Lessor on all other minerals mined and marketed or utilized by lessee from said land, one-tenth either in kind or value at the well or mine at lessee's election, except that on sulphur mined and marketed the royalty shall be one dollar ($1.00) per long ton. If, at the expiration of the primary term or at any time or times thereafter, there is any well on said land or on lands with which said land or any portion thereof has been pooled, capable of producing oil or gas, and all such wells are shut-in, this lease shall, nevertheless, continue in force as though operations were being conducted on said land for so long as said wells are shut-ins, and thereafter this lease may be continued in force as if no shut-in had occurred. Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee. If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of ninety consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, lessee shall pay or tender, by check or draft of lessee, as royalty, a sum equal to fifty dollars ($50.00) for each acre of land then covered hereby. Lessee shall make like payments or tenders at or before the end of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions of this paragraph. Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid under this lease if the wells were producing, and may be delivered to Lessor at the above address, regardless of ownership or changes in the ownership of shut-in royalty. If at any time that lessee pays or tenders shut-in royalty, two or more parties are, or claim to be, entitled to receive same, lessee may, in lieu of any other method of payment herein provided, pay or tender such shut-in royalty, in the manner above specified, either jointly to such parties or separately to each in accordance with their respective ownerships thereof, as lessee may elect. Any payment hereunder may be made by check or draft of lessee deposited in the mail or delivered to Lessor or the party entitled to receive payment on or before the last date for payment. Nothing herein shall impair lessee's right to release the lease or a portion thereof as provided in paragraph 5 hereof. In the event of assignment of this lease in whole or in part, liability for payment hereunder shall rest exclusively on the then owner or owners of this lease, severally as to acreage owned by each.

4. Lessee is hereby granted the right, at its option, to pool or unitize any land covered by this lease with any other land covered by this lease, and/or with any other land, lease, or leases, as to any or all minerals or horizons, so as to establish units containing not more than 80 surface acres, plus 10% acreage tolerance; provided, however, units may be established as to any one or more horizons, or existing units may be enlarged as to any one or more horizons, so as to contain as many as 640 surface acres plus 10% acreage tolerance, if limited to one or more of the following: (1) gas, other than casinghead gas, (2) liquid hydrocarbons (condensate) which are not liquids in the subsurface reservoir, (3) minerals produced from wells classified as gas wells by the conservation agency having jurisdiction. If larger units than any of those herein permitted, either at the time established, or after enlargement, are required under any governmental rule or order, for the drilling or operation of a well at a regular location, or for obtaining maximum allowable from any well to be drilled, drilling, or already drilled, any such unit may be established or enlarged to conform to the size required by such governmental order or rule. Lessee shall exercise said option as to each desired unit by executing an instrument identifying such unit and filing it for record in the public office in which this lease is recorded. Each of said options may be exercised by lessee at any time and from time to time while this lease is in force, and whether before or after production has been established either on said land, or on the portion of said land included in the unit, or on other land unitized therewith. A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be mineral, royalty, or leasehold interests in lands within the unit which are not effectively pooled or unitized. Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted upon said land under this lease. There shall be allocated to the land covered by this lease within each such unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) that proportion of the total production of unitized minerals from the unit, after deducting any used in lease or unit operations, which the number of surface acres in such land (or in each such separate tract) covered by this lease within the unit bears to the total number of surface acres in the unit, and the production so allocated shall be considered for all purposes, including payment or delivery of royalty, overriding royalty and any other payments out of production, to be the entire production of unitized minerals from the land to which allocated in the same manner as though produced therefrom under the terms of this lease. The owner of the reversionary estate of any term royalty or mineral estate agrees that the accrual of royalties pursuant to this paragraph or of shut-in royalties from a well on the unit shall

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on September 9, 2013

Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

Exhibit J
West 17th MPSJ

satisfy any limitation of term requiring production of oil or gas. The formation of any unit hereunder which includes land not covered by this lease shall not have the effect of exchanging or transferring any interest under this lease (including, without limitation, any shut-in royalty which may become payable under this lease) between parties owning interests in land covered by this lease and parties owning interests in land not covered by this lease. Neither shall it impair the right of lessee to release as provided in paragraph 5 hereof, except that lessee may not so release as to lands within a unit while there are operations thereon for unitized minerals unless all pooled leases are released as to lands within the unit. At any time while this lease is in force lessee may dissolve any unit established hereunder by filing for record in the public office where this lease is recorded a declaration to that effect, if at that time no operations are being conducted thereon for unitized minerals. Subject to the provisions of this paragraph 4, a unit once established hereunder shall remain in force so long as any lease subject thereto shall remain in force. If this lease now or hereafter covers separate tracts, no pooling or unitization of royalty interests as between any such separate tracts is intended or shall be implied or result merely from the inclusion of such separate tracts within this lease but lessee shall nevertheless have the right to pool or unitize as provided in this paragraph 4 with consequent allocation of production as herein provided. As used in this paragraph 4, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises.

For any well that is drilled as a "horizontal" well, as such term is defined by the Railroad Commission of Texas, and such well is then or thereafter classified as an oil well, lessee may form a pooled oil unit that does not exceed 640 surface acres. For any well that is drilled as a "horizontal" well, as such term is defined by the Railroad Commission of Texas, and such well is then or thereafter classified as a gas well, lessee may form a pooled gas unit that does not exceed 640 surface acres plus a tolerance of 10% of 640 acres. In addition, such horizontal gas production unit may include 40 acres for each 827 feet of horizontal drainhole. Units may be established as to any one or more horizontal wells, whether classified as oil or gas and existing units may be amended or enlarged if necessary to comply with the provisions contained herein. For the purpose of determining the point in time when the right to create a pooled unit for a horizontal well under this provision may be exercised, the granting of a permit by the Railroad Commission of Texas for the drilling of a well and the commencement of drilling operation thereon shall be treated as if a well had already been completed and classified as a gas well or an oil well as specified by the operator in the naming of the unit in the declaration filed in the office of the county clerk where the land, or a portion thereof, is located.

5. Lessee may at any time and from time to time execute and deliver to Lessor or file for record a release or releases of this lease as to any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations, as to the released acreage or interest.

6. Whenever used in this lease the word "operations" shall mean operations for and any of the following: drilling, testing, completing, reworking, re-completing, deepening, plugging back or repairing of a well in search for or in an endeavor to obtain production of oil, gas, sulphur or other minerals, excavating a mine, production of oil, gas, sulphur or other mineral, whether or not in paying quantities. If this lease covers an interest in the oil, gas or other minerals in and under the leased premises that is less than the entire fee simple estate, and a cotenant of Lessor or Lessee in said leased premises conducts operations on, or produces oil, gas or other minerals from, said leased premises or lands pooled therewith, such operations or production shall be deemed operations or production, as the case may be, by Lessee under the terms hereof, whether such operations be conducted or production obtained during or after the primary term thereof and shall cause this lease to remain in force and effect as if such operations were being conducted by Lessee or such production was being obtained from wells operated by Lessee, regardless of whether Lessee has a contractual agreement with such cotenant concerning such operations or production or whether Lessee participates in or pays Lessee's share of the costs of such operations. If such cotenant establishes production as set forth in this paragraph, Lessee shall pay to Lessor the fractional royalty set forth in the royalty provision(s) of this lease on all such production, proportionately reduced to Lessor's undivided interest in the leased premises (and pooled unit, if applicable), or if such production is shut in, Lessee may pay shut-in royalties according to the terms hereof.

7. Lessee shall have the use, free from royalty, of oil and gas produced from said land in all operations hereunder. Lessee shall have the right at any time to remove all machinery and fixtures placed on said land, including the right to draw and remove casing. Lessee shall pay for damages caused by its operations to growing crops and timber on said land.

8. The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any mineral or horizon. All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns. No change or division in the ownership of said land, royalties, or other moneys, or any part thereof, howsoever effected, shall increase the obligations or diminish the rights of lessee, including, but not limited to, the location and drilling of wells and the measurement of production. Notwithstanding any other actual or constructive knowledge or notice thereof of or to lessee, its successors or assigns, no change or division in the ownership of said land or of the royalties, or other moneys, or the right to receive the same, howsoever effected, shall be binding upon the then record owner of this lease until thirty (30) days after there has been furnished to such record owner at his or its principal place of business by Lessor or lessor's heirs, successors, or assigns, notice of such change or division, supported by either originals or duly certified copies of the instruments which have been properly filed for record and which evidence such change or division, and of such court records and proceedings, transcripts, or other documents as shall be necessary in the opinion of such record owner to establish the validity of such change or division. If any such change in ownership occurs by reason of the death of the owner, lessee may, nevertheless pay or tender such royalties, or other moneys, or part thereof, to the credit of the decedent in a depository bank provided for above.

9. In the event Lessor considers that lessee has not complied with all its obligations hereunder, both express and implied, Lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by Lessor. The service of said notice shall be precedent to the bringing of any action by Lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee. Neither the service of said notice nor the doing of any acts by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligations hereunder. If this lease is cancelled for any cause, it shall nevertheless remain in force and effect as to (1) sufficient acreage around each well as to which there are operations to constitute a drilling or maximum allowable unit under applicable governmental regulations, (but in no event less than forty acres), such acreage to be designated by lessee as nearly as practicable in the form of a square centered at the well, or in such shape as then existing spacing rules require; and (2) any part of said land included in a pooled unit on which there are operations. Lessee shall also have such easements on said land as are necessary to operations on the acreage so retained.

10. Lessor hereby warrants and agrees to defend title to said land against the claims of all persons whomsoever claiming by, through or under Lessor, but not otherwise. Lessor's rights, and interests hereunder shall be charged primarily with any mortgages, taxes or other liens, or interest and other charges on said land, but Lessor agrees that lessee shall have the right at any time, if lessor is in default in payment of any such obligation, to pay or reduce same for Lessor, either before or after maturity, and be subrogated to the rights of the holder thereof and to deduct amounts so paid from royalties or other payments payable or which may become payable to Lessor and/or assigns under this lease. If this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether lessor's interest is herein specified or not), or no interest therein, then the royalties and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by Lessor) shall be paid out of the royalty herein provided. This lease shall be binding upon each party who executes it without regard

**CERTIFIED COPY CERTIFICATE**
**STATE OF TEXAS**
**COUNTY OF KARNES**
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on September 9, 2013

Carol Swize, County Clerk
Karnes County, Texas

By Darene Villanueva Deputy

to whether it is executed by all those named herein as Lessor.

11. If, while this lease is in force, at, or after the expiration of the primary term hereof, it is not being continued in force by reason of the shut-in well provisions of paragraph 3 hereof, and lessee is not conducting operations on said land by reason of (1) any law, order, rule or regulation, (whether or not subsequently determined to be invalid) or (2) any other cause, whether similar or dissimilar, (except financial) beyond the reasonable control of lessee, the primary term hereof shall be extended until the first anniversary date hereof occurring ninety (90) or more days following the removal of such delaying cause, and this lease may be extended thereafter by operations as if such delay had not occurred.

12. In the event a portion or portions of the land herein leased is pooled or unitized with other lands so as to form a pooled unit or units in accordance with the provisions of Paragraph 4 hereof, operations on, completion of a well upon, or production from such unit or units will not maintain this lease in force commencing on the third anniversary after the expiration of the primary term hereof as to the land not included in such unit or units. Commencing on the third anniversary after the end of the primary term, this lease shall also terminate as to all stratum that lie below the base of the formation that is then producing, provided, however, that if Lessee is then engaged in drilling operations on the subject land or on land with which the subject land has been pooled, or has been engaged in such operations within the 90-day period prior thereto, the termination to be effectuated under this paragraph, both as to lands outside the pooled unit and below the base of the producing formation, shall be delayed until 90 days after the cessation of such operation, provided further, that if within such 90-day period following the cessation of such operation, Lessee commences additional drilling operations on another well, such terminations shall be further delayed until 90 days after the cessation of such subsequent drilling operation and such additional successive drilling operations as may be undertaken without an interruption of more than 90 days.

13. Lessee agrees that payments for royalty on oil and gas reserved by Lessor herein and payable to Lessor under the terms of this lease will be paid to Lessor monthly as the production from said lease or any unit containing a part of said lease is sold, and that the first payment for Lessor's said royalty will be paid to Lessor within ninety (90) days after the sale of any such production from the leased premises or unit, but this provision shall not apply to the sale of products saved in testing the well before the official Railroad Commission potential test.

14. Lessee shall build and maintain fences around its slush and drainage pits and tank batteries so as to protect livestock against loss, damage or injury; and, upon completion or abandonment of any well or wells, Lessee shall fill and level off all slush pits and locations and completely clean up the drilling site of all rubbish thereon, and Lessee further agrees and will at Lessor's option level all roads and fill all road ditches constructed by Lessee on said premises immediately when such roads cease to be used in connection with Lessee's operations.

15. Lessee will indemnify, defend and hold harmless Lessor, his heirs, successors and assigns, from any and all losses, costs, damages, liabilities, claims, suits, actions, proceedings, assessments, fines and expenses (including costs of court and reasonable attorneys' fees) on account of actual or claimed injuries to or death of persons, or actual or claimed damages to property, including the lands and the property of Lessee and Lessor, or any condition that violates any law or permit, arising out of, resulting from, or in any way connected with regardless of the cause thereof.

16. Notwithstanding anything contained herein to the contrary, if, at the expiration of the primary term thereof, this lease is not being maintained in effect in any manner provided for herein, including but not limited to operations upon or production from the leased premises or on lands pooled therewith; Lessee, its successors and/or assigns, shall have the exclusive right and option to extend the primary term thereof as to the lands then covered hereby or any portion thereof chosen by Lessee, for an additional period of one (1) year, such option to be exercised and evidenced by the payment or tender to Lessor, on or before said date, of a sum equal to __$1,900__ per net mineral acre to be covered by the extension,

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

By: _____
    THOMAS MIKA

## ACKNOWLEDGEMENT

STATE OF TEXAS      §

COUNTY OF KARNES      §

This instrument was acknowledged before me on the 5th day of January 2013 by **Thomas Mika.**

HANNAH KAHLENE CRAFT
Notary Public, State of Texas
My Commission Expires
July 27, 2016

_____ Notary Public,
State of Texas
Notary's name:
(Printed): Hannah Kahlene Craft

Notary's commission expires: 07/27/2016

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic
copy of the original record now in my lawful custody
and possession, as the same is recorded in
the Official Public records in my office, and I
hereby certify on September 9, 2013
    Carol Swize, County Clerk
    Karnes County, Texas

By _____ Deputy

Filed for Record in:
Karnes County

On: Jan 09,2013 at 01:18P

As a:
Recording Official Record

Document Number:    00118905

Amount:    24.00

Receipt Number - 62234
By,
Elizandra Garcia

STATE OF TEXAS        COUNTY OF KARNES
I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
Karnes County
as stamped hereon by me.
Jan 09,2013

Carol Swize, Karnes County Clerk
Karnes County

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic
copy of the original record now in my lawful custody
and possession, as the same is recorded in
the Official Public records in my office, and I
hereby certify on September 9, 2013
Carol Swize, County Clerk
Karnes County, Texas

By  Deputy



FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/17/2015 4:23:37 PM
KEITH E. HOTTLE
Clerk

Appendix E

# RAILROAD COMMISSION OF TEXAS
## OIL & GAS DIVISION
### APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER

This facsimile W-1 was generated electronically from data submitted to the RRC.
A certification of the automated data is available in the RRC's Austin office.

**Permit Status:  As Submitted**

The RRC has not approved this application. Duplication or distribution of information is at the user's own risk.

API No. **42-255-32208**

Application Status # **728834**

SWR Exception Case/Docket No. _____

1. RRC Operator No. **594675**

2. Operator's Name (as shown on form P-5, Organization Report)
**MURPHY EXPL. & PROD. CO. - USA**

3. Operator Address (include street, city, state, zip): _____

4. Lease Name **WHITFIELD EAST UNIT**

5. Well No. **1H**

6. Purpose of filing (mark ALL appropriate boxes):
☒ New Drill   ☐ Recompletion   ☐ Reclass   ☐ Field Transfer   ☐ Re-Enter
☒ Amended     ☐ Amended  as Drilled (BHL) (Also File Form W-1D)

7. Wellbore Profile (mark ALL appropriate boxes):
☐ Vertical   ☒ Horizontal (Also File Form W-1H)   ☐ Directional (Also File Form W-1D)   ☐ Sidetrack

8. Total Depth **12135**

9. Do you have the right to develop the minerals under any right-of-way?  ☒ Yes   ☐ No

10. Is this well subject to Statewide Rule 36 (hydrogen sulfide area)?  ☒ Yes   ☐ No

11. RRC District No. **02**

12. County **KARNES**

13. Surface Location  ☒ Land   ☐ Bay/Estuary   ☐ Inland Waterway   ☐ Offshore

14. This well is to be located **11** miles in a **NE** direction from **Karnes** which is the nearest town in the county of the well site.

15. Section _____   16. Block _____   17. Survey **PICKET, J J**

18. Abstract No. **A-227**

19. Distance to nearest lease line: **100** ft.

20. Number of contiguous acres in lease, pooled unit, or utilized tract: **297.8**

21. Lease Perpendiculars: **605** ft from the **W** line and **253** ft from the **N** line.

22. Survey Perpendiculars: **1732** ft from the **E** line and **5376** ft from the **S** line.

23. Is this a pooled unit?  ☒ Yes   ☐ No

24. Unitization Docket No: _____

25. Are you applying for Substandard Acreage Field?  ☐ Yes   ☒ No   (attach Form W-1A)

| 26. RRC District No. | 27. Field No. | 28. Field Name (exactly as shown in RRC records) | 29. Well Type | 30. Completion Depth | 31. Distance to Nearest Well in this Reservoir | 32. Number of Wells on this lease in this Reservoir |
|---|---|---|---|---|---|---|
| 02 | 27135750 | EAGLEVILLE (EAGLE FORD-2) | Oil or Gas Well | 12135 | 0.00 | 1 |

**Remarks**

Exhibit N
West 17th MPSJ

**Certificate:**
I certify that information stated in this application is true and complete, to the best of my knowledge.

Nicole Holloway, Regulatory Analyst     Oct 22, 2012
Name of filer                          Date submitted

(281)675-9453     Nicole_Holloway@Murphyoilcorp.com
Phone             E-mail Address (OPTIONAL)

RAILROAD COMMISSION OF TEXAS
OIL & GAS DIVISION

APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER

*This facsimile W-1 was generated electronically from data submitted to the RRC.*
*A certification of the automated data is available in the RRC's Austin office.*

| | |
|---|---|
| Permit Status: | As Submitted |

*The RRC has not approved this application. Duplication or distribution of information is at the user's own risk.*

**Status #** 728834

**Approved Date:**

| 1. RRC Operator No. | 2. Operator's Name (exactly as shown on form P-5, Organization Report) | 3. Lease Name | 4. Well No. |
|---|---|---|---|
| 594675 | MURPHY EXPL. & PROD. CO. - USA | WHITFIELD EAST UNIT | 1H |

5. Field as shown on Form W-1   EAGLEVILLE (EAGLE FORD-2) (Field # 27135750, RRC District 02)

| 6. Section | 7. Block | 8. Survey | 9. Abstract | 10. County of BHL |
|---|---|---|---|---|
| | | PICKET, J J | 227 | KARNES |

11. Terminus Lease Line Perpendiculars
330 ft. from the ___ W ___ line, and 100 ft. from the ___ S ___ line

12. Terminus Survey Line Perpendiculars
1949 ft. from the ___ E ___ line, and 100 ft. from the ___ S ___ line

13. Penetration Point Lease Line Perpendiculars
330 ft. from the ___ W ___ line, and 691 ft. from the ___ N ___ line

# CERTIFICATE OF POOLING AUTHORITY

# P-12

Revised 05/2001

| 1. Field Name(s) Eagleville (Eagleford - 2) | 2. Lease/ID Number (if assigned) | 3. RRC District Number 02 |
|---|---|---|
| 4. Operator Name Murphy Expl. & Prod. Co. - USA | 5. Operator P-5 Number 594675 | 6. Well Number 1H |
| 7. Pooled Unit Name Whitfield East Unit | 8. API Number | 9. Purpose of Filing [X] Drilling Permit (W-1) |
| 10. County Karnes | 11. Total acres in pooled unit 297.8 | [ ] Completion Report |

## DESCRIPTION OF INDIVIDUAL TRACTS CONTAINED WITHIN THE POOLED UNIT

| TRACT/PLAT IDENTIFIER | TRACT NAME | ACRES IN TRACT (See list #7 below) | INDICATE UNDIVIDED INTERESTS UNLEASED | NON-POOLED |
|---|---|---|---|---|
| *1. | Lucian A. Pawelek, ET UX | 176.8 | [ ] | [ ] |
| 2. | Roy Janysek, ET UX | 60.0 | [ ] | [ ] |
| 3. | 4-J Mineral, LTD. | 61.0 | [ ] | [ ] |
| | | | [ ] | [ ] |
| | | | [ ] | [ ] |
| | | | [ ] | [ ] |
| | | | [ ] | [ ] |
| | | | [ ] | [ ] |
| | | | [ ] | [ ] |
| | | | [ ] | [ ] |
| | | | [ ] | [ ] |

## CERTIFICATION:

I declare under penalties prescribed pursuant to the Sec. 91.143, Texas Natural Resources Code, that I am authorized to make the foregoing statements and that the information provided by me or under my direction on this Certificate of Pooling Authority is true, correct, and complete to the best of my knowledge.

| _Kathy Hutching_ Signature | Kathy Hutching Print Name | |
|---|---|---|
| Sr. Regulatory Analyst Title | Kathy_Hutching@Murphyoilcorp.com E-mail (if available) | 11/22/2011 Date | (281) 717-5143 Phone |

INSTRUCTIONS — Reference: Statewide Rules 31, 38 and 40

1. When two or more tracts are pooled to form a unit to obtain a drilling permit, file completion paperwork, or reform a pooled unit pursuant to Rule 38(d)(3) the operator must file an original Certificate of Pooling Authority and certified plat.
2. The certified plat shall designate each tract with an outline and a tract identifier. The tract identifier on the plat shall correspond to the tract identifier and associated information listed on the Certificate.
3. If within an individual tract, a non-pooled and/or unleased interest exists, indicate by checking the appropriate box.
4. If the Purpose of Filing is to obtain a drilling permit, in box #1 list all applicable fields separately or enter "All Fields" if the Certificate pertains to all fields requested on Form W-1.
5. If the Purpose of Filing is to file completion paperwork, enter the applicable field name in box #1 for the completion.
6. Identify the drill site tract with an * to the left of the tract identifier.
7. The total number of acres in the pooled unit in #11 should equal the total of all acres in the individual tracts listed.

Page 1 of 1

SW# 37 - Murphy owned offset



NOTE:
THIS PLAT REPRESENTS A SURVEY MADE ON THE GROUND FOR A WELL LOCATION. IT IS NOT A
BOUNDARY SURVEY. AS SUCH, THIS DOES NOT, NOR WAS IT INTENDED TO, COMPLY WITH THE
TEXAS MINIMUM STANDARDS OF PRACTICE FOR A LAND BOUNDARY SURVEY. LEASE LINES
WERE ESTABLISHED AND COMPILED FROM INFORMATION PROVIDED BY OTHERS. THE PLAT IS
STRICTLY INTENDED FOR THE USE OF MURPHY EXPLORATION & PRODUCTION COMPANY FOR
ACQUIRING TEXAS RAILROAD COMMISSION PERMITS FOR OIL AND GAS EXPLORATION IN
TEXAS.

MEASURED DEPTHS (MD) REFLECTED ON THIS PLAT REPRESENT OVERALL BORE
LENGTH, AND ARE NOT ELEVATIONS RELATIVE TO VERTICAL SURVEY DATUM.

ALL AS DRILLED INFORMATION REPRESENTED ON THE PLAT WAS PROVIDED BY:
DOCUMENT: MURPHY EXPL. & PROD. CO., USA - NEW PERMIT FOR WHITFIELD EAST #1H
DATED 03/21/11
DOCUMENT: LEAM DRILLING SYSTEMS, INC. - SURVEY REPORT - WHITFIELD EAST NO. 1H
DATED: 05/09/2012

**MURPHY**
EXPLORATION & PRODUCTION CO.

MURPHY EXPL. & PROD. CO. - USA
FINAL "AS-COMPLETED" PLAT
*WHITFIELD EAST UNIT WELL NO. 1H*
LOCATED IN THE J. J. PICKET SURVEY, A-227
KARNES COUNTY, TEXAS



MURPHY
EXPLORATION & PRODUCTION CO.

MURPHY EXPL. & PROD. CO. - USA
FINAL "AS-COMPLETED" PLAT
WHITFIELD EAST UNIT WELL NO. 1H
LOCATED IN THE J. J. PICKET SURVEY, A-227
KARNES COUNTY, TEXAS

# RAILROAD COMMISSION OF TEXAS
## OIL & GAS DIVISION

**FORM W-1** 07/2004

## APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER

*This facsimile W-1 was generated electronically from data submitted to the RRC.*
*A certification of the automated data is available in the RRC's Austin office.*

| | |
|---|---|
| API No. 42-255-32208 | |
| Drilling Permit # 728834 | **Permit Status:** Approved |
| SWR Exception Case/Docket No. 0278980 (R37) | |

**1. RRC Operator No.** 594675

**2. Operator's Name** (as shown on form P-5, Organization Report)
MURPHY EXPL. & PROD. CO. - USA

**3. Operator Address** (include street, city, state, zip):

**4. Lease Name** WHITFIELD EAST UNIT     **5. Well No.** 1H

**6. Purpose of filing** (mark ALL appropriate boxes):
- [X] New Drill
- [X] Amended
- [ ] Recompletion
- [ ] Reclass
- [ ] Field Transfer
- [ ] Re-Enter

**7. Wellbore Profile** (mark ALL appropriate boxes):
- [ ] Vertical
- [X] Horizontal (Also File Form W-1H)
- [ ] Directional (Also File Form W-1D)
- [ ] Amended as Drilled (BHL) (Also File Form W-1D)
- [ ] Sidetrack

**8. Total Depth** 12135

**9. Do you have the right to develop the minerals under any right-of-way?** [X] Yes [ ] No

**10. Is this well subject to Statewide Rule 36 (hydrogen sulfide area)?** [ ] Yes [X] No

**11. RRC District No.** 02     **12. County** KARNES

**13. Surface Location** [X] Land [ ] Bay/Estuary [ ] Inland Waterway [ ] Offshore

**14. This well is to be located** 11 **miles in a** NE **direction from** Karnes **which is the nearest town in the county of the well site.**

**15. Section**    **16. Block**    **17. Survey** PICKET, J J    **18. Abstract No.** A-227

**19. Distance to nearest lease line:** 120 ft.

**20. Number of contiguous acres in lease, pooled unit, or unitized tract:** 297.8

**21. Lease Perpendiculars:** 605 ft from the W line and 253 ft from the N line.

**22. Survey Perpendiculars:** 1732 ft from the E line and 5376 ft from the S line.

**23. Is this a pooled unit?** [X] Yes [ ] No

**24. Unitization Docket No:**

**25. Are you applying for Substandard Acreage Field?** [ ] Yes [X] No (attach Form W-1A)

| 26. RRC District No. | 27. Field No. | 28. Field Name (exactly as shown in RRC records) | 29. Well Type | 30. Completion Depth | 31. Distance to Nearest Well in this Reservoir | 32. Number of Wells on this lease in this Reservoir |
|---|---|---|---|---|---|---|
| 02 | 27135750 | EAGLEVILLE (EAGLE FORD-2) | Oil or Gas Well | 12135 | 0.00 | 1 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Remarks**

---

**Certificate:**

I certify that information stated in this application is true and complete, to the best of my knowledge.

Nicole Holloway, Regulatory Analyst     Oct 22, 2012

Name of filer     Date submitted

(281)675-9453     Nicole_Holloway@Murphyoilcorp.com

Phone     E-mail Address (OPTIONAL)

Page 1 of 2

Permit Status: Approved

The RRC has not approved this application.
Duplication or distribution of information is
at the user's own risk

# RAILROAD COMMISSION OF TEXAS
## OIL & GAS DIVISION
### APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER

**Form W-1H**
Supplemental Horizontal Well Information

07/2004

*This facsimile W-1 was generated electronically from data submitted to the RRC.*
*A certification of the automated data is available in the RRC's Austin office.*

Permit # 728834

Approved Date: Oct 26, 2012

| 1. RRC Operator No. | 2. Operator's Name (exactly as shown on form P-5, Organization Report) | 3. Lease Name | 4. Well No. |
|---|---|---|---|
| 594675 | MURPHY EXPL. & PROD. CO. - USA | WHITFIELD EAST UNIT | 1H |

5. Field as shown on Form W-1: EAGLEVILLE (EAGLE FORD-2) (Field # 27135750, RRC District 02)

| 6. Section | 7. Block | 8. Survey | 9. Abstract | 10. County of BHL |
|---|---|---|---|---|
| | | PICKET, J J | 227 | KARNES |

11. Terminus Lease Line Perpendiculars
370 ft. from the W line, and 78 ft. from the S line.

12. Terminus Survey Line Perpendiculars
1909 ft. from the E line, and 78 ft. from the S line.

13. Penetration Point Lease Line Perpendiculars
243 ft. from the W line, and 557 ft. from the N line.

Page 2 of 2

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/17/2015 4:23:37 PM
KEITH E. HOTTLE
Clerk

Appendix F

# RAILROAD COMMISSION OF TEXAS
## OIL & GAS DIVISION

## APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER

This facsimile W-1 was generated electronically from data submitted to the RRC.
A certification of the automated data is available in the RRC's Austin office.

**FORM W-1** 07/2004

Permit Status: **As Submitted**

The RRC has not approved this application. Duplication or distribution of information is at the user's own risk.

API No. _____

Application Status # 728837

SWR Exception Case/Docket No. _____

1. RRC Operator No. **594675**

2. Operator's Name (as shown on form P-5, Organization Report)
**MURPHY EXPL. & PROD. CO. - USA**

3. Operator Address (include street, city, state, zip): _____

4. Lease Name **WHITFIELD WEST UNIT**

5. Well No. **1H**

6. Purpose of filing (mark ALL appropriate boxes):
- [X] New Drill
- [ ] Amended
- [ ] Recompletion
- [ ] Amended as Drilled (BHH) (Also File Form W-ID)
- [ ] Reclass
- [ ] Field Transfer
- [ ] Re-Enter

7. Wellbore Profile (mark ALL appropriate boxes):
- [ ] Vertical
- [X] Horizontal (Also File Form W-1H)
- [ ] Directional (Also File Form W-ID)
- [ ] Sidetrack

9. Do you have the right to develop the minerals under any right-of-way? [X] Yes [ ] No

10. Is this well subject to Statewide Rule 36 (hydrogen sulfide area)? [X] Yes [ ] No

Total Depth **12089**

11. RRC District No. **02**

12. County **KARNES**

13. Surface Location
- [X] Land
- [ ] Bay/Estuary
- [ ] Inland Waterway
- [ ] Offshore

14. This well is to be located _____ miles in a **NE** direction from _____

which is the nearest town in the county of the well site. **Karnes**

15. Section **11**

16. Block _____

17. Survey **PICKET, J J**

18. Abstract No. **A-227**

19. Distance to nearest lease line: **100** ft.

20. Number of contiguous acres in lease, pooled unit, or unitized tract: **194.3**

21. Lease Perpendiculars: **249** ft from the **N** line and **633** ft from the **W** line.

22. Survey Perpendiculars: **3140** ft from the **E** line and **5400** ft from the **S** line.

23. Is this a pooled unit? [X] Yes [ ] No

24. Unitization Docket No: _____

25. Are you applying for Substandard Acreage Field? [ ] Yes [X] No (attach Form W-1A)

26. RRC District No. **02**

27. Field No. **27135750**

28. Field Name (exactly as shown in RRC records) **EAGLEVILLE (EAGLE FORD-2)**

29. Well Type **Oil or Gas Well**

30. Completion Depth **12089**

31. Distance to Nearest Well in this Reservoir **0.00**

32. Number of Wells on this lease in this Reservoir **1**

**Remarks**

Exhibit O
West 17th MPSJ

**Certificate:**
I certify that information stated in this application is true and complete, to the best of my knowledge.

Kathy Hutching, Sr. HSE Analyst
(Regulatory)

Name of filer Katherine_Hutching@murphyoilcorp.com

Phone **(281)6752143**

Date submitted **Nov 22, 2011**

E-mail Address (OPTIONAL)

Page 1 of 2

RAILROAD COMMISSION OF TEXAS
OIL & GAS DIVISION

APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER

Form W-1H
Supplemental Horizontal Well Information
07/2004

*This facsimile W-1 was generated electronically from data submitted to the RRC.*
*A certification of the automated data is available in the RRC's Austin office.*

Permit Status:   As Submitted

*The RRC has not approved this application.*
*Duplication or distribution of information is at the user's own risk*

| 1. RRC Operator No. | 2. Operator's Name (exactly as shown on form P-5, Organization Report) | 3. Lease Name | Status # 728837 |
|---|---|---|---|
| 594675 | MURPHY EXPL. & PROD. CO. - USA | WHITFIELD WEST UNIT | Approved Date: |

| | | | 4. Well No. 1H |
|---|---|---|---|

5. Field as shown on Form W-1: EAGLEVILLE (EAGLE FORD-2) (Field # 27135750, RRC District 02)

| 6. Section | 7. Block | 8. Survey | 9. Abstract | 10. County of BHL |
|---|---|---|---|---|
| | | PICKET, J J | 227 | KARNES |

11. Terminus Lease Line Perpendiculars
400 ft. from the E line, and 100 ft. from the S line

12. Terminus Survey Line Perpendiculars
2679 ft. from the E line, and 100 ft. from the S line

13. Penetration Point Lease Line Perpendiculars
400 ft. from the E line, and 696 ft. from the N line

RAILROAD COMMISSION OF TEXAS
Oil and Gas Division
PO Box 12967
Austin, Texas 78711-2967
www.rrc.state.tx.us

## CERTIFICATE OF
## POOLING AUTHORITY

# P-12

Revised 05/2001

| 1. Field Name(s) Eagleville (Eagleford -2) | 2. Lease/ID Number (if assigned) | 3. RRC District Number 02 |
|---|---|---|
| 4. Operator Name Murphy Expl. & Prod. Co. - USA | 5. Operator P-5 Number 594675 | 6. Well Number 1H |
| 7. Pooled Unit Name Whitfield West Unit | 8. API Number | 9. Purpose of Filing |
| 10. County Karnes | 11. Total acres in pooled unit 194.3 | ☑ Drilling Permit (W-1)  ☐ Completion Report |

### DESCRIPTION OF INDIVIDUAL TRACTS CONTAINED WITHIN THE POOLED UNIT

| TRACT/PLAT IDENTIFIER | TRACT NAME | ACRES IN TRACT (See Inst. #7 below) | INDICATE UNDIVIDED INTERESTS | |
|---|---|---|---|---|
| | | | UNLEASED | NON-POOLED |
| *1. | Lucian A. Pawelek, ET UX | 113.8 | ☐ | ☐ |
| 2. | Fabian Pawelek, ET AL | 80.5 | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |

CERTIFICATION:
I declare under penalties prescribed pursuant to the Sec. 91.143, Texas Natural Resources Code, that I am authorized to make the foregoing statements and that the information provided by me or under my direction on this Certificate of Pooling Authority is true, correct, and complete to the best of my knowledge.

| _Tody Hutching_ | Kathy Hutching | |
|---|---|---|
| Signature | Print Name | |
| Sr. Regulatory Analyst | Kathy_Hutching@Murphyoilcorp.com | 11/22/2011 | (281) 717-5143 |
| Title | E-mail (if available) | Date | Phone |

INSTRUCTIONS — Reference: Statewide Rules 31, 38 and 40

1. When two or more tracts are pooled to form a unit to obtain a drilling permit, file completion paperwork, or reform a pooled unit pursuant to Rule 38(d)(3) the operator must file an original Certificate of Pooling Authority and certified plat.
2. The certified plat shall designate each tract with an outline and a tract identifier. The tract identifier on the plat shall correspond to the tract identifier and associated information listed on the Certificate.
3. If within an individual tract, a non-pooled and/or unleased interest exists, indicate by checking the appropriate box.
4. If the Purpose of Filing is to obtain a drilling permit, in box #1 list all applicable fields separately or enter "All Fields" if the Certificate pertains to all fields requested on Form W-1.
5. If the Purpose of Filing is to file completion paperwork, enter the applicable field name in box #1 for the completion.
6. Identify the drill site tract with an * to the left of the tract identifier.
7. The total number of acres in the pooled unit in #11 should equal the total of all acres in the individual tracts listed.

Page 1 of 1



Survey abstract boundary not field verified.

MURPHY EXPLORATION & PRODUCTION CO.

MURPHY EXPL. & PROD. CO. - USA

PROPOSED WELL LOCATION

WHITFIELD WEST UNIT WELL NO. 1H

LOCATED IN THE J. J. PICKET SURVEY, A-227
KARNES COUNTY, TEXAS

J. J. PICKET
A-227

W. C. BULLOCK
A-31

F. J. HASKINS
A-136

GERALD L. WRIGHT
5334
STATE OF TEXAS R.P.L.S. NO. 5334

LEGEND
SHL — SURFACE HOLE LOCATION
PP — PENETRATION POINT
BHL — BOTTOM HOLE LOCATION

ALL COORDINATES:
PROJECTION: TEXAS SOUTH CENTRAL ZONE
HORIZONTAL DATUM: NAD 27
VERTICAL DATUM: NAVD88
UNITS: U.S. SURVEY FEET

DWG. DATE 11/10/11
DWG. SCALE 1"=1000'

# RAILROAD COMMISSION OF TEXAS
## OIL & GAS DIVISION

## APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER

*This facsimile W-1 was generated electronically from data submitted to the RRC.
A certification of the automated data is available in the RRC's Austin office.*

**FORM W-1**
07/2004

| | |
|---|---|
| API No. 42-255-32209 | |
| Drilling Permit # 728837 | Permit Status: **Approved** |
| SWR Exception Case/Docket No. | |

**1. RRC Operator No.** 594675

**2. Operator's Name** (as shown on form P-5, Organization Report)
MURPHY EXPL. & PROD. CO. - USA

**3. Operator Address** (include street, city, state, zip):

**4. Lease Name** WHITFIELD WEST UNIT

**5. Well No.** 1H

### GENERAL INFORMATION

**6. Purpose of filing** (mark ALL appropriate boxes):
- [X] New Drill
- [ ] Amended
- [ ] Recompletion
- [ ] Amended as Drilled (BHL) (Also File Form W-1D)
- [ ] Recless
- [ ] Field Transfer
- [ ] Re-Enter

**7. Wellbore Profile** (mark ALL appropriate boxes):
- [ ] Vertical
- [X] Horizontal (Also File Form W-1H)
- [ ] Directional (Also File Form W-1D)
- [ ] Sidetrack

**8. Total Depth** 12089

**9. Do you have the right to develop the minerals under any right-of-way?** [X] Yes [ ] No

**10. Is this well subject to Statewide Rule 36 (hydrogen sulfide area)?** [X] Yes [ ] No

### SURFACE LOCATION INFORMATION

**11. RRC District No.** 02

**12. County** KARNES

**13. Surface Location** [X] Land [ ] Bay/Estuary [ ] Inland Waterway [ ] Offshore

**14. This well is to be located** _____ miles in a NE direction from Karnes which is the nearest town in the county of the well site.

**15. Section** 11 **16. Block** _____ **17. Survey** PICKET, J J **18. Abstract No.** A-227

**19. Distance to nearest lease line:** 100 ft.

**20. Number of contiguous acres in lease, pooled unit, or unitized tract:** 194.3

**21. Lease Perpendiculars:** 249 ft from the N line and 633 ft from the W line.

**22. Survey Perpendiculars:** 3140 ft from the E line and 5400 ft from the S line.

**23. Is this a pooled unit?** [X] Yes [ ] No

**24. Unitization Docket No:**

**25. Are you applying for Substandard Acreage Field?** [ ] Yes [X] No (attach Form W-1A) [X] No

### FIELD INFORMATION

| 26. RRC District No. | 27. Field No. | 28. Field Name (exactly as shown in RRC records) | 29. Well Type | 30. Completion Depth | 31. Distance to Nearest Well in this Reservoir | 32. Number of Wells on this lease in this Reservoir |
|---|---|---|---|---|---|---|
| 02 | 27135750 | EAGLEVILLE (EAGLE FORD-2) | Oil or Gas Well | 12089 | 0.00 | 1 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Remarks**

### RRC Use only

**Certificate:**

I certify that information stated in this application is true and complete, to the best of my knowledge.

Kathy Hutching, Sr. HSE Analyst

**Name of filer** Kathy Hutching, Sr, HSE Analyst (Regulatory)

**Phone** (281)675-2143

**E-mail Address (OPTIONAL)** Katherine_Hutching@murphyoilcorp.com

**Date submitted** Nov 22, 2011

**RAILROAD COMMISSION OF TEXAS**
**OIL & GAS DIVISION**

**Form W-1H** 07/2004
Supplemental Horizontal Well Information

**APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER**

*This facsimile W-1 was generated electronically from data submitted to the RRC.*
*A certification of the automated data is available in the RRC's Austin office.*

Permit # 728837

Approved Date: Nov 29, 2011

Permit Status: **Approved**

*The RRC has not approved this application.*
*Duplication or distribution of information is*
*at the user's own risk.*

| 1. RRC Operator No. | 2. Operator's Name (exactly as shown on form P-5, Organization Report) | 3. Lease Name | 4. Well No. |
|---|---|---|---|
| **594675** | MURPHY EXPL. & PROD. CO. - USA | WHITFIELD WEST UNIT | 1H |

5. Field as shown on Form W-1   EAGLEVILLE (EAGLE FORD-2) (Field # 27135750, RRC District 02)

| 6. Section | 7. Block | 8. Survey | 9. Abstract | 10. County of BHL |
|---|---|---|---|---|
| | | PICKET, J J | 227 | KARNES |

11. Terminus Lease Line Perpendiculars
__400__ ft. from the __E__ line, and __100__ ft. from the __S__ line

12. Terminus Survey Line Perpendiculars
__2679__ ft. from the __E__ line, and __100__ ft. from the __S__ line

13. Penetration Point Lease Line Perpendiculars
__400__ ft. from the __E__ line, and __696__ ft. from the __N__ line

## Railroad Commission of Texas

## PERMIT TO DRILL, RE-COMPLETE, OR RE-ENTER ON REGULAR OR ADMINISTRATIVE EXCEPTION LOCATION

### CONDITIONS AND INSTRUCTIONS

**Permit Invalidation.** It is the operator's responsibility to make sure that the permitted location complies with Commission density and spacing rules in effect on the spud date. The permit becomes invalid automatically if, because of a field rule change or the drilling of another well, the stated location is not in compliance with Commission field rules on the spud date. If this occurs, application for an exception to Statewide Rules 37 and 38 must be made and a special permit granted prior to spudding. Failure to do so may result in an allowable not being assigned and/or enforcement procedures being initiated.

**Permit expiration.** This permit expires two (2) years from the date of issuance shown on the original permit. The permit period will not be extended.

**Drilling Permit Number.** The drilling permit number shown on the permit MUST be given as a reference with any notification to the district (see below), correspondence, or application concerning this permit.

**Rule 37 Exception Permits.** This Statewide Rule 37 exception permit is granted under either provision Rule 37 (h)(2)(A) or 37(h)(2)(B). Be advised that a permit granted under Rule 37(h)(2)(A), notice of application, is subject to the General Rules of Practice and Procedures and if a protest is received under Section 1.3, "Filing of Documents," and/or Section 1.4, "Computation of Time," the permit may be deemed invalid.

### Before Drilling

**Fresh Water Sand Protection.** The operator must set and cement sufficient surface casing to protect all usable-quality water, as defined by the Texas Commission on Environmental Quality (TCEQ). Before drilling a well, the operator must obtain a letter from the Texas Commission on Environmental Quality stating the depth to which water needs protection, Write: Texas Commission on Environmental Quality (Surface Casing-MC151), P.O. Box 13087, Austin, TX 78711-3087. File a copy of the letter with the appropriate district office.

**Accessing the Well Site.** If an OPERATOR, well equipment TRANSPORTER or WELL service provider must access the well site from a roadway on the state highway system (Interstate, U.S. Highway, State Highway, Farm-to-Market Road, Ranch-to-Market Road, etc.), an access permit is required from TxDOT. Permit applications are submitted to the respective TxDOT Area Office serving the county where the well is located.

**Water Transport to Well Site.** If an operator intends to transport water to the well site through a temporary pipeline laid above ground on the state's right-of-way, an additional TxDOT permit is required. Permit applications are submitted to the respective TxDOT Area Office serving the county where the well is located.

### *NOTIFICATION

The operator is REQUIRED to notify the district office when setting surface casing, intermediate casing, and production casing, or when plugging a dry hole. The district office MUST also be notified if the operator intends to re-enter a plugged well or re-complete a well into a different regulatory field. Time requirements are given below. The drilling permit number MUST be given with such notifications.

### During Drilling

**Permit at Drilling Site.** A copy of the Form W-1 Drilling Permit Application, the location plat, a copy of Statewide Rule 13 alternate surface casing setting depth approval from the district office, if applicable, and this drilling permit must be kept at the permitted well site throughout drilling operations.

**\*Notification of Setting Casing.** The operator MUST call in notification to the appropriate district office (phone number shown the on permit) a minimum of eight (8) hours prior to the setting of surface casing, intermediate casing, AND production casing. The individual giving notification MUST be able to advise the district office of the drilling permit number.

**\*Notification of Re-completion/Re-entry.** The operator MUST call in notification to the appropriate district office (phone number shown on permit) a minimum of eight (8) hours prior to the initiation of drilling or re-completion operations. The individual giving notification MUST be able to advise the district office of the drilling permit number.

## Completion and Plugging Reports

**Producing Well.** Statewide Rule 16 states that the operator of a well shall file with the Commission the appropriate completion report within thirty (30) days after completion of the well or within ninety (90) days after the date on which the drilling operation is completed, whichever is earlier. Completion of the well in a field authorized by this permit voids the permit for all other fields included in the permit unless the operator indicates on the initial completion report that the well is to be a dual or multiple completion and promptly submits an application for multiple completion. All zones are required to be completed before the expiration date on the existing permit. Statewide Rule 40(d) requires that upon successful completion of a well in the same reservoir as any other well previously assigned the same acreage, proration plats and P-15s (if required) must be submitted with no double assignment of acreage.

**Dry or Noncommercial Hole.** Statewide Rule 14(b)(2) prohibits suspension of operations on each dry or non-commercial well without plugging unless the hole is cased and the casing is cemented in compliance with Commission rules. If properly cased, Statewide Rule 14(b)(2) requires that plugging operations must begin within a period of one (1) year after drilling or operations have ceased. Plugging operations must proceed with due diligence until completed. An extension to the one-year plugging requirement may be granted under the provisions stated in Statewide Rule 14(b)(2).

**Intention to Plug.** The operator must file a Form W-3A (Notice of Intention to Plug and Abandon) with the district office at least five (5) days prior to beginning plugging operations. If, however, a drilling rig is already at work on location and ready to begin plugging operations, the district director or the director's delegate may waive this requirement upon request, and verbally approve the proposed plugging procedures.

**\*Notification of Plugging a Dry Hole.** The operator MUST call in notification to the appropriate district office (phone number shown on permit) a minimum of four (4) hours prior to beginning plugging operations. The individual giving the notification MUST be able to advise the district office of the drilling permit number and all water protection depths for that location as stated in the Texas Commission on Environmental Quality letter.

DIRECT INQUIRIES TO: DRILLING PERMIT SECTION, OIL AND GAS DIVISION

PHONE
(512) 463-6751

MAIL:
PO Box 12967
Austin, Texas, 78711-2967

# RAILROAD COMMISSION OF TEXAS
## OIL & GAS DIVISION

PERMIT TO DRILL, DEEPEN, PLUG BACK, OR RE-ENTER ON A REGULAR OR ADMINISTRATIVE EXCEPTION LOCATION

| PERMIT NUMBER 728837 | DATE PERMIT ISSUED OR AMENDED Nov 29, 2011 | DISTRICT * 02 |
|---|---|---|
| API NUMBER 42-255-32209 | FORM W-1 RECEIVED Nov 22, 2011 | COUNTY KARNES |
| TYPE OF OPERATION NEW DRILL | WELLBORE PROFILE(S) Horizontal | ACRES 194.3 |

| OPERATOR 594675 MURPHY EXPL. & PROD. CO. - USA | NOTICE This permit and any allowable assigned may be revoked if payment for fee(s) submitted to the Commission is not honored. **District Office Telephone No:** (210) 227-1313 |
|---|---|
| LEASE NAME WHITFIELD WEST UNIT | WELL NUMBER 1H |
| LOCATION 11 miles NE direction from KARNES | TOTAL DEPTH 12089 |

Section, Block and/or Survey

SECTION ◄          BLOCK ◄          ABSTRACT ◄ 227

SURVEY ◄ PICKET, J J

| DISTANCE TO SURVEY LINES 3140 ft. E   5400 ft. S | DISTANCE TO NEAREST LEASE LINE 100 ft. |
|---|---|
| DISTANCE TO LEASE LINES 249 ft. N   633 ft. W | DISTANCE TO NEAREST WELL ON LEASE See FIELD(s) Below |

FIELD(s) and LIMITATIONS:

**\* SEE FIELD DISTRICT FOR REPORTING PURPOSES \***

| FIELD NAME LEASE NAME | ACRES NEAREST LEASE | DEPTH | WELL # NEAREST WE | DIST |
|---|---|---|---|---|
| EAGLEVILLE (EAGLE FORD-2) | 194.30 | 12,089 | 1H | 02 |
| WHITFIELD WEST UNIT | 100 | | 0 | |

WELLBORE PROFILE(s) FOR FIELD: Horizontal

RESTRICTIONS: This is a hydrogen sulfide field. Hydrogen Sulfide Fields with perforations must be isolated and tested per State Wide Rule 36 and a Form H-9 filed with the district office. Fields with SWR 10 authority to downhole commingle must be isolated and tested individually prior to commingling production.

```
Lateral: TH1
Penetration Point Location
  Lease Lines:      400.0 F E L
                    696.0 F N L
Terminus Location
  Lease Lines:      400.0 F E L
                    100.0 F S L
  Survey Lines:    2679.0 F E L
                    100.0 F S L
```

THE FOLLOWING RESTRICTIONS APPLY TO ALL FIELDS

# RAILROAD COMMISSION OF TEXAS
## OIL & GAS DIVISION

PERMIT TO DRILL, DEEPEN, PLUG BACK, OR RE-ENTER ON A REGULAR OR ADMINISTRATIVE EXCEPTION LOCATION

| PERMIT NUMBER 728837 | DATE PERMIT ISSUED OR AMENDED Nov 29, 2011 | DISTRICT * 02 |
|---|---|---|
| API NUMBER 42-255-32209 | FORM W-1 RECEIVED Nov 22, 2011 | COUNTY KARNES |
| TYPE OF OPERATION NEW DRILL | WELLBORE PROFILE(S) Horizontal | ACRES 194.3 |

| OPERATOR | | |
|---|---|---|
| MURPHY EXPL. & PROD. CO. - USA  594675 | **NOTICE** This permit and any allowable assigned may be revoked if payment for fee(s) submitted to the Commission is not honored. **District Office Telephone No:** (210) 227-1313 | |

| LEASE NAME WHITFIELD WEST UNIT | WELL NUMBER 1H |
|---|---|
| LOCATION 11 miles NE direction from KARNES | TOTAL DEPTH 12089 |

Section, Block and/or Survey

SECTION ◄          BLOCK ◄          ABSTRACT ◄ 227

SURVEY ◄ PICKET, J J

| DISTANCE TO SURVEY LINES 3140 ft. E  5400 ft. S | DISTANCE TO NEAREST LEASE LINE 100 ft. |
|---|---|
| DISTANCE TO LEASE LINES 249 ft. N  633 ft. W | DISTANCE TO NEAREST WELL ON LEASE See FIELD(s) Below |

FIELD(s) and LIMITATIONS:

\*   SEE FIELD DISTRICT FOR REPORTING PURPOSES   \*

FIELD NAME
LEASE NAME

| | ACRES NEAREST LEASE | DEPTH | WELL # NEAREST WE | DIST |
|---|---|---|---|---|

This well shall be completed and produced in compliance with applicable special field or statewide spacing and density rules. If this well is to be used for brine mining, underground storage of liquid hydrocarbons in salt formations, or underground storage of gas in salt formations, a permit for that specific purpose must be obtained from Environmental Services prior to construction, including drilling, of the well in accordance with Statewide Rules 81, 95, and 97.

Data Validation Time Stamp   Nov 29, 2011 2:23 PM( 'As Approved' Version )          Page 4 of 4

## ACKNOWLEDGMENTS

STATE OF _____ §
                      §
COUNTY OF _____ §

This instrument was acknowledged before me on the ____ day of February, 2013, by
_____, as _____ of WEST 17TH RESOURCES
LLC, a [_____] corporation, on behalf of said corporation.

Notary Public, State of _____
Printed Name: _____
My commission expires: _____


STATE OF TEXAS        §
                      §
COUNTY OF HARRIS      §

This instrument was acknowledged before me on the 21st day of May, 2013, by D. Brett
Pennington, as Vice President US Onshore Operations of MURPHY EXPLORATION &
PRODUCTION COMPANY—USA, a Delaware corporation, on behalf of said corporation.

*RANDAL BLAKE NEWSOM*
*Notary Public, State of Texas*
*My Commission Expires*
*July 29, 2016*

Notary Public, State of _____
Printed Name: _____
My commission expires: _____

. ASSIGNMENT OF OIL AND GAS LEASES – Signature Page


CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic
copy of the original record now in my lawful cust-
ody and possession, as the same is recorded in
the Official Public records in my office, and I
hereby certify on September 10, 2013
Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

## ACKNOWLEDGMENTS

THE STATE OF TEXAS          §
                            §
COUNTY OF HARRIS            §

This instrument was acknowledged before me on the 21 day of May, 2013 by Gregory A. Forero, Manager of Gansevoort Investments, LLC, Manager of WEST 17TH RESOURCES, LLC, a Delaware limited liability company on behalf of said limited liability company.



HANNAH KAHLENE CRAFT
Notary Public, State of Texas
My Commission Expires
July 27, 2016

_Hannah Kahlene Craft_
Notary Public, State of _Texas_
Printed Name: _Hannah Kahlene Craft_
My commission expires: _July 27, 2016_

THE STATE OF TEXAS          §
                            §
COUNTY OF HARRIS            §

This instrument was acknowledged before me on the _____ day of May, 2013, by D. Brett Pennington, as Vice President US Onshore Operations of MURPHY EXPLORATION & PRODUCTION COMPANY—USA, a Delaware corporation, on behalf of said corporation.

Notary Public, State of _____
Printed Name: _____
My commission expires: _____

HOU01:1246508.1          ASSIGNMENT OF OIL AND GAS LEASES – Signature Page

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on September 10, 2013

Carol Swize, County Clerk
Karnes County, Texas
By_____ Deputy

## Exhibit "A"

1.  That certain Oil and Gas Leases dated effective the 5th day of January, 2012 by and between Pamela Mika Wolf, whose mailing address is 201 Nuthatch Drive, Buda, Texas 78160, and West 17th Resources LLC, whose mailing address is 1707 1/2 Post Oak Boulevard, Houston. Texas 77056.

2.  That certain Oil and Gas Leases dated effective the 5th day of January, 2012 by and between Thomas Mika, whose mailing address is 201 Nuthatch Drive, Buda, Texas 78160, and West 17th Resources LLC, whose mailing address is 1707 1/2 Post Oak Boulevard, Houston. Texas 77056.

Filed for Record in:
Karnes County

On: May 24,2013 at 10:23A

As a:
Recording Official Record

Document Number:     00123362

Amount:              40.00

Receipt Number - 66502
By,
Vanessa Villanueva

STATE OF TEXAS          COUNTY OF KARNES
I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded in the volume and page of the named records of:
Karnes County
as stamped hereon by me.
May 24,2013

Carol Swize, Karnes County Clerk
Karnes County

HOU01:1246508.1

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on September 10, 2013
Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy



FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

02/17/2015 4:23:37 PM

KEITH E. HOTTLE
Clerk

Appendix G

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

| | | |
|---|---|---|
| STATE OF TEXAS | § § § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF KARNES | § § | |

## ASSIGNMENT OF OIL AND GAS LEASES

**West 17th Resources LLC**, a Delaware limited liability company, with offices at 1707 1/2 Post Oak Boulevard, Houston. Texas 77056 ("*Assignor*"), in consideration of the agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby BARGAINS, SELLS, ASSIGNS AND TRANSFERS to **Murphy Exploration & Production Company—USA**, a Delaware corporation, with offices at 16290 Katy Freeway, Houston, Texas 77094-1606 ("*Assignee*"), all of Assignor's right, title and interest in and to the Property described in this Assignment of Oil and Gas Leases (this "*Assignment*"), effective as of May 21, 2013 (the "*Effective Date*").

TO HAVE AND TO HOLD the Property unto Assignee, its successors and assigns, forever, subject to the terms and provisions of the Leases (as defined below) and the other matters set forth below:

### ARTICLE I
### CONVEYANCE

1.1    **Leases**. The "*Property*" consists of all of Assignor's right and title to, and interest in, and all privileges and obligations appurtenant to, the oil, gas and mineral leases described in EXHIBIT "A" (the "*Leases*"), SAVE and EXCEPT the Assignor's interest in that certain Lease Agreement dated January 5, 2013, by and between Assignor and Thomas Mika and that certain Lease Agreement dated January 5, 2013, by and between Assignor and Pamela Mika Wolf, which are herewith excepted and reserved unto Assignor and its successors and assigns.

### ARTICLE II
### SPECIAL WARRANTY

2.1    **Special Warranty of Title**.    EXCEPT FOR SECTION 3.8 HEREOF, ASSIGNOR HEREBY ASSIGNS THE PROPERTY TO ASSIGNEE WITHOUT REPRESENTATION OR WARRANTY OF TITLE, EXPRESS, STATUTORY, IMPLIED OR OTHERWISE; PROVIDED HOWEVER, THAT ASSIGNOR WARRANTS TITLE TO THE PROPERTY UNTO ASSIGNEE AGAINST EVERY PERSON WHOMSOEVER LAWFULLY CLAIMING OR TO CLAIM THE SAME OR ANY PART THEREOF BY, THROUGH OR UNDER ASSIGNOR OR ANY OF ITS AFFILIATES, BUT NOT OTHERWISE.

HOU01:1246508.1        ASSIGNMENT OF OIL AND GAS LEASES – Signature Page

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _____

Carol Swize, County Clerk
Karnes County, Texas
By_____ Deputy

Exhibit P
West 17th MPSJ

## ARTICLE III
## OTHER PROVISIONS

3.1 **Further Assurances**. Assignee and Assignor agree to execute, acknowledge and deliver from time to time such further instruments and do such other acts as are reasonably requested by the other Party to effectuate the purposes of this Assignment.

3.2 **Successors and Assigns**. The provisions of this Assignment shall be covenants running with the land covered by the Leases, and this Assignment binds and inures to the benefit of the Parties and their respective successors and assigns. All the terms, provisions, covenants, obligations, indemnities, representations, warranties and conditions of this Assignment shall be enforceable by the Parties and their respective successors and assigns.

3.3 **Counterparts**. This Assignment may be executed in counterparts, each of which shall constitute an original and all of which shall constitute one document.

3.4 **Attachments**. The Exhibit attached to this Assignment is incorporated herein by reference and made a part hereof for all purposes.

3.5 **Governing Law**. THIS ASSIGNMENT SHALL BE GOVERNED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, EXCLUDING ANY CONFLICTS-OF-LAW RULE OR PRINCIPLE THAT MIGHT APPLY THE LAW OF ANOTHER JURISDICTION. THIS ASSIGNMENT, AND ANY OTHER INSTRUMENTS OF CONVEYANCE EXECUTED UNDER THIS ASSIGNMENT, WILL BE GOVERNED BY AND MUST BE CONSTRUED ACCORDING TO THE LAWS OF THE STATE WHERE THE PROPERTY TO WHICH THEY PERTAIN IS LOCATED, EXCLUDING ANY CONFLICTS-OF-LAW RULE OR PRINCIPLE THAT MIGHT APPLY THE LAW OF ANOTHER JURISDICTION. THE PARTIES CONSENT TO THE EXERCISE OF JURISDICTION IN PERSONAM BY THE COURTS OF THE STATE OF TEXAS FOR ANY ACTION ARISING OUT OF THIS ASSIGNMENT, THE SETTLEMENT AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY.

3.6 **Severability**. If any provision of this Assignment is found by a court of competent jurisdiction to be invalid or unenforceable, that provision will be deemed modified to the extent necessary to make it valid and enforceable and if it cannot be so modified, it shall be deemed deleted and the remainder of this Assignment shall continue and remain in full force and effect.

3.7 **Obligation to Drill**. Nothing herein shall obligate Assignee to conduct any drilling operations whatsoever upon the Leases, or lands pooled therewith, or to continue to operate any well or to operate or maintain in force or attempt to maintain in force the Leases.

3.8 **Consent to Assignment**. Assignor hereby represents to Assignee that Assignor has heretofore acquired any and all necessary consents from the lessors of the Leases for this Assignment.

*[Signature page follows]*

HOU01:1246508.1

ASSIGNMENT OF OIL AND GAS LEASES – Page 2

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _____ 2013



Carol Swize, County Clerk
Karnes County, Texas
By_____ Deputy

IN WITNESS WHEREOF, the authorized representatives of Assignor and Assignee execute this Assignment on the dates set forth in their respective acknowledgments hereto, to be effective for all purposes as of the Effective Date.

**ASSIGNOR:**

WEST 17TH RESOURCES LLC

By: _____
Printed Name: _____
Title: _____


**ASSIGNEE:**

MURPHY EXPLORATION & PRODUCTION COMPANY—USA

By: _____

Printed Name: D. Brett Pennington

Title: Vice President US Onshore Operations

HOU01:1246508.1            ASSIGNMENT OF OIL AND GAS LEASES – Signature Page

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful cust-ody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _____
Carol Swize, County Clerk
Karnes County, Texas
By_____ Deputy

IN WITNESS WHEREOF, the authorized representatives of Assignor and Assignee execute this Assignment on the dates set forth in their respective acknowledgments hereto, to be effective for all purposes as of the Effective Date.

**ASSIGNOR:**

**WEST 17TH RESOURCES LLC**

By: its Manager, GANSEVOORT INVESTMENTS, LLC

By: _____

Printed Name:    Gregory A. Forero

Title:        Manager

**ASSIGNEE:**

**MURPHY EXPLORATION & PRODUCTION COMPANY—USA**

By: _____

Printed Name: D. Brett Pennington

Title:  Vice President US Onshore Operations

HOU01:1246508.1          ASSIGNMENT OF OIL AND GAS LEASES – Signature Page

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic
copy of the original record now in my lawful cust-
ody and possession, as the same is recorded in
the Official Public records in my office, and I
hereby certify on SEPTEMBER 10, 2013
Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

The said 290.69 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a 5/8" steel pin set at a fence corner in the East boundary of the said John J. Pickett Survey, Abstract No. 227, and the West boundary of County Road No. 311, for the occupied Southeast corner of the called 298.72 acre tract and the Southeast corner of this 290.69 acre tract; the same being the occupied Northeast corner of the Edwin Janysek called 40.0 acre tract (Volume 541, Page 220, Deed Records, Karnes County, Texas), and being N. 01 degree 21 minutes E.- 2296.8' from the approximate Southeast corner of the said John J. Pickett Survey, Abstract No. 227. (NOTE, the bearing and distance from the "survey" corner derived from office information for map location only)

THENCE: Along the South boundary of the called 298.72 acre tract with the following two (2) calls:

1. N. 89 degrees 30 minutes 00 seconds W.- 2303.50', to a 5/8" steel pin set at a fence corner for the occupied Northwest corner of the Frank Janysek, Jr., called 50.0 acre tract (Volume 541, Page 216, Deed Records, Karnes County, Texas) and the occupied Northeast corner of the Fabian Pawelek called 40.0 acre tract (Volume 382, Page 129, Deed Records, Karnes County, Texas), and
2. N. 89 degrees 22 minutes 23 seconds W.- 1518.32', to a large creosote post at a fence corner in the East boundary of the Zefred Alex Kruciak, et ux, called 162.9 acre tract (Volume 197, Page 185, Deed Records, Karnes County, Texas), for the occupied Southwest corner of the called 298.72 acre tract and the Southwest corner of this 290.69 acre tract; the same being the occupied Northwest corner of the Fabian Pawelek called 40.0 acre tract.

THENCE: N. 00 degrees 39 minutes 00 seconds E. along the West boundary of the called 298.72 acre tract; the same being the East boundary of the called 162.9 acre tract and of the Zefred Alex Kruciak, et ux, called 18.2 acre tract (Volume 220, Page 393, Deed Records, Karnes County, Texas), a distance of 1898.59' to a 5/8" steel pin set a point of intersection with the Southeast right-of-way boundary of F. M. Highway No. 1354, and being on a curve, for a corner of this 290.69 acre tract.

THENCE: Along the Southeast right-of-way boundary of said F. M. Highway No. 1354 and curve to the left (Long Chord bears N. 25 degrees 03 minutes 56 seconds E.-201.46') whose radius is 244.63' and whose central angle for this part is 48 degrees 37 minutes 53 seconds, an arc distance of 207.64' to a 5/8" steel pin set at the P.T. of said curve.

-2-

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _____


Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

CAUSE NO. 13-04-00087-CVK

| | | |
|---|---|---|
| WEST 17TH RESOURCES, LLC | § | IN THE DISTRICT COURT |

WEST 17TH RESOURCES, LLC            §    IN THE DISTRICT COURT
                                    §
AND                                 §
                                    §
                                    §
PAMELA MIKA WOLF AND                §
THOMAS MIKA,                        §
        Plaintiffs                  §
v.                                  §    81st JUDICIAL DISTRICT
                                    §
                                    §
LUCIAN A. PAWELEK AND               §
CARLEEN J. PAWELEK,                 §
        Defendants                  §
                                    §
                                    §    KARNES COUNTY, TEXAS

## AFFIDAVIT OF JEAN ANDERSON

The Affiant, Jean Anderson, after being duly sworn, states as follows:

1. My name is Jean Anderson. I am over the age of 21 years, have never been convicted of a felony or other crime involving moral turpitude and am fully competent to make this Affidavit.

2. I am employed as a paralegal at the law office of Jones Gill LLP.

3. I have personal knowledge of the facts set-forth herein, and I am authorized to make this Affidavit in regards to the authentication of the production documents as downloaded from the Texas Railroad Commission online records as it relates the production on the Whitfield West Unit 1H and the Whitfield East Unit 1H. I pulled the records as of 10:27 a.m. on September 3, 2013. There are a total of four (4) pages.

4. The month of first production for the Whitfield East Unit 1H was May 2012 and the Whitfield West Unit 1H had nominal production as of April 2012, with significant production beginning in May 2012.

5. There was nothing additional nor was there anything detracted from the spreadsheets. The spreadsheets are the same as downloaded from the Texas Railroad Commission online records.

6. These statements are voluntarily made and are accurate as to what transpired while searching and downloading the production records from the Texas Railroad Commission online records.

7. I have reviewed the spreadsheets and all information stated therein is within my personal knowledge and is true and correct as it appears on the Texas Railroad Commission online records.

8. That if called to trial or hearing, Affiant can fully and truthfully testify to the above and foregoing.

_____
AFFIANT

STATE OF TEXAS            §

COUNTY OF HARRIS          §

Subscribed and sworn to before me by Jean Anderson on this 30th day of September, 2013.

RENEA CONN
Notary Public, State of Texas
My Commission Expires
October 03, 2014

_____
Notary Public in and for the State of Texas

Search Criteria:

Lease Name: WHITFIELD WEST UNIT, Lease No.: 10112
Well Type: Oil
Field Name: EAGLEVILLE (EAGLE FORD-2), Field No.: 27135750
Operator Name: MURPHY EXPL. & PROD. CO. - USA, Operator No.: 594675
District: 02
Lease Production and Disposition
Date Range: Jan 2012 - Oct 2013

| Date | OIL (BBL) Production | Disposition | Casinghead (MCF) Production | Disposition | Operator Name | Operator No. | Field Name | Field No. |
|---|---|---|---|---|---|---|---|---|
| Apr 2012 | 4 | 4 | 0 | 0 USA | MURPHY EXPL. & PROD. CO. - | 594675 | EAGLEVILLE (EAGLE FORD-2) | 27135750 |
| May 2012 | 19,439 | 18,788 | 17,298 | 17,298 | | | | |
| Jun 2012 | 20,511 | 20,225 | 17,589 | 17,589 | | | | |
| Jul 2012 | 24,106 | 24,346 | 22,726 | 22,726 | | | | |
| Aug 2012 | 19,196 | 19,192 | 18,476 | 18,476 | | | | |
| Sep 2012 | 13,765 | 14,359 | 14,821 | 14,821 | | | | |
| Oct 2012 | 12,594 | 12,701 | 11,922 | 11,922 | | | | |
| Nov 2012 | 7,042 | 6,952 | 9,673 | 9,673 | | | | |
| Dec 2012 | 596 | -609 | 880 | 880 | | | | |
| Jan 2013 | 7,680 | 7,607 | 8,542 | 8,542 | | | | |
| Feb 2013 | 23,447 | 23,432 | 18,989 | 18,989 | | | | |
| Mar 2013 | 25,126 | 25,216 | 22,155 | 22,155 | | | | |
| Apr 2013 | 0 | 0 | 0 | 0 | | | | |
| May 2013 | 4,348 | 4,317 | 4,078 | 4,078 | | | | |
| Jun 2013 | NO RPT | NO RPT | NO RPT | NO RPT | | | | |
| Jul 2013 | NO RPT | NO RPT | NO RPT | NO RPT | | | | |
| Aug 2013 | NO RPT | NO RPT | NO RPT | NO RPT | | | | |
| Sep 2013 | NO RPT | NO RPT | NO RPT | NO RPT | | | | |
| Total | 177854 | 177748 | 167149 | 167149 | | | | |

Search Criteria:

Lease Name: WHITFIELD EAST UNIT, Lease No.: 10113
Well Type: Oil
Field Name: EAGLEVILLE (EAGLE FORD-2), Field No.: 27135750
Operator Name: MURPHY EXPL. & PROD. CO. - USA, Operator No.: 594675
District: 02
Lease Production and Disposition
Date Range: Jan 2012 - Oct 2013

| Date | OIL (BBL) Production | OIL (BBL) Disposition | Casinghead Production | Casinghead Disposition | Operator Name | Operator No. | Field Name | Field No. |
|---|---|---|---|---|---|---|---|---|
| Apr 2012 | 0 | 0 | 0 | 0 | MURPHY EXPL. & PROD. CO. - USA | 594675 2) | EAGLEVILLE (EAGLE FORD- | 27135750 |
| May 2012 | 20,934 | 20,018 | 17,202 | 17,202 | | | | |
| Jun 2012 | 21,545 | 21,851 | 20,222 | 20,222 | | | | |
| Jul 2012 | 30,209 | 30,147 | 29,236 | 29,236 | | | | |
| Aug 2012 | 23,547 | 23,585 | 24,121 | 24,121 | | | | |
| Sep 2012 | 20,819 | 21,303 | 20,963 | 20,963 | | | | |
| Oct 2012 | 20,180 | 20,330 | 18,920 | 18,920 | | | | |
| Nov 2012 | 10,868 | 10,728 | 15,648 | 15,648 | | | | |
| Dec 2012 | 533 | 555 | 807 | 807 | | | | |
| Jan 2013 | 5,383 | 5,336 | 5,995 | 5,995 | | | | |
| Feb 2013 | 6,061 | 6,028 | 5,229 | 5,229 | | | | |
| Mar 2013 | 5,587 | 5,615 | 5,627 | 5,627 | | | | |
| Apr 2013 | 49,506 | 49,569 | 44,215 | 44,215 | | | | |
| May 2013 | 7,751 | 7,697 | 6,716 | 6,716 | | | | |
| Jun 2013 | NO RPT | NO RPT | NO RPT | NO RPT | | | | |
| Jul 2013 | NO RPT | NO RPT | NO RPT | NO RPT | | | | |
| Aug 2013 | NO RPT | NO RPT | NO RPT | NO RPT | | | | |
| Sep 2013 | NO RPT | NO RPT | NO RPT | NO RPT | | | | |
| Total | 222923 | 222762 | 214901 | 214901 | | | | |

Search Criteria:

Lease Name: WHITFIELD WEST UNIT, Lease No.: 10112
Well Type: Oil
Field Name: EAGLEVILLE (EAGLE FORD-2), Field No.: 27135750
Operator Name: MURPHY EXPL & PROD. CO. - USA, Operator No.: 594675
District: 02
Lease Production and Disposition
Date Range: Jan 2012 - Oct 2013

**OIL (BBL)**

| Date | Production | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | No Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Apr 2012 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 0 |
| May 2012 | 19,439 | 18788 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Jun 2012 | 20,511 | 20225 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Jul 2012 | 24,106 | 24346 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Aug 2012 | 19,196 | 19192 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sep 2012 | 13,765 | 14359 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Oct 2012 | 12,594 | 12701 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Nov 2012 | 7,042 | 6952 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Dec 2012 | 596 | 609 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Jan 2013 | 7,680 | 7607 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Feb 2013 | 23,447 | 23432 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Mar 2013 | 25,126 | 25216 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Apr 2013 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| May 2013 | 4,348 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4317 |
| Jun 2013 | NO RPT | | | | | | | | | | |
| Jul 2013 | NO RPT | | | | | | | | | | |
| Aug 2013 | NO RPT | | | | | | | | | | |
| Sep 2013 | NO RPT | | | | | | | | | | |
| Total | 177854 | 173427 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 4317 |

**Casinghead**

| Date | Production | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | No Code |
|---|---|---|---|---|---|---|---|---|---|---|
| Apr 2012 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| May 2012 | 17,298 | 0 | 0 | 0 | 17298 | 0 | 0 | 0 | 0 | 0 |
| Jun 2012 | 17,589 | 0 | 0 | 0 | 17589 | 0 | 0 | 0 | 0 | 0 |
| Jul 2012 | 22,726 | 0 | 0 | 0 | 22726 | 0 | 0 | 0 | 0 | 0 |
| Aug 2012 | 18,476 | 0 | 0 | 0 | 18476 | 0 | 0 | 0 | 0 | 0 |
| Sep 2012 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Oct 2012 | 14,821 | 620 | 8615 | 0 | 5586 | 0 | 0 | 0 | 0 | 0 |
| Nov 2012 | 11,922 | 700 | 10922 | 0 | 300 | 0 | 0 | 0 | 0 | 0 |
| Dec 2012 | 9,673 | 259 | 9290 | 0 | 124 | 0 | 0 | 0 | 0 | 0 |
| Jan 2013 | 880 | 26 | 847 | 0 | 7 | 0 | 0 | 0 | 0 | 0 |
| Feb 2013 | 8,542 | 210 | 8233 | 0 | 99 | 0 | 0 | 0 | 0 | 0 |
| Mar 2013 | 18,989 | 582 | 18226 | 0 | 181 | 0 | 0 | 0 | 0 | 0 |
| Apr 2013 | 22,155 | 610 | 21530 | 0 | 15 | 0 | 0 | 0 | 0 | 0 |
| May 2013 | 4,078 | 113 | 3920 | 0 | 45 | 0 | 0 | 0 | 0 | 0 |
| Jun 2013 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Jul 2013 | NO RPT | | | | | | | | | |
| Aug 2013 | NO RPT | | | | | | | | | |
| Sep 2013 | NO RPT | | | | | | | | | |
| Total | 167149 | 3120 | 81583 | 0 | 82446 | 0 | 0 | 0 | 0 | 0 |

Search Criteria:

Lease Name: WHITFIELD EAST UNIT, Lease No.: 10113
Well Type: Oil
Field Name: EAGLEVILLE (EAGLE FORD-2), Field No.: 27135750
Operator Name: MURPHY EXPL & PROD. CO. - USA, Operator No.: 594675
District: 02
Lease Production and Disposition
Date Range: Jan 2012 - Oct 2013

### OIL (BBL) D

| Date | Production | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 No Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Apr 2012 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| May 2012 | 20,934 | 0 | 20018 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Jun 2012 | 21,545 | 0 | 21851 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Jul 2012 | 30,209 | 0 | 30147 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Aug 2012 | 23,547 | 0 | 23585 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sep 2012 | 20,819 | 0 | 21303 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Oct 2012 | 20,180 | 0 | 20330 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Nov 2012 | 10,868 | 0 | 10728 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Dec 2012 | 533 | 0 | 555 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Jan 2013 | 5,383 | 0 | 5336 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Feb 2013 | 6,061 | 0 | 6028 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Mar 2013 | 5,587 | 0 | 5615 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Apr 2013 | 49,506 | 0 | 49569 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| May 2013 | 7,751 | 7697 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Jun 2013 | NO RPT | | | | | | | | | | |
| Jul 2013 | NO RPT | | | | | | | | | | |
| Aug 2013 | NO RPT | | | | | | | | | | |
| Sep 2013 | NO RPT | | | | | | | | | | |
| Total | 222923 | 7697 | 215065 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

### Casinghead

| Date | Production | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 No Code |
|---|---|---|---|---|---|---|---|---|---|
| Apr 2012 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| May 2012 | 17,202 | 0 | 0 | 0 | 17202 | 0 | 0 | 0 | 0 |
| Jun 2012 | 20,222 | 0 | 0 | 0 | 20222 | 0 | 0 | 0 | 0 |
| Jul 2012 | 29,236 | 0 | 0 | 0 | 29236 | 0 | 0 | 0 | 0 |
| Aug 2012 | 24,121 | 0 | 0 | 0 | 24121 | 0 | 0 | 0 | 0 |
| Sep 2012 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Oct 2012 | 20,963 | 856 | 11891 | 0 | 8216 | 0 | 0 | 0 | 0 |
| Nov 2012 | 18,920 | 1110 | 17334 | 0 | 476 | 0 | 0 | 0 | 0 |
| Dec 2012 | 15,648 | 418 | 15030 | 0 | 200 | 0 | 0 | 0 | 0 |
| Jan 2013 | 807 | 24 | 776 | 0 | 7 | 0 | 0 | 0 | 0 |
| Feb 2013 | 5,995 | 148 | 5778 | 0 | 69 | 0 | 0 | 0 | 0 |
| Mar 2013 | 5,229 | 161 | 5018 | 0 | 50 | 0 | 0 | 0 | 0 |
| Apr 2013 | 5,627 | 155 | 5468 | 0 | 4 | 0 | 0 | 0 | 0 |
| May 2013 | 44,215 | 1158 | 43057 | 0 | 0 | 0 | 0 | 0 | 0 |
| Jun 2013 | 6,716 | 186 | 6456 | 0 | 74 | 0 | 0 | 0 | 0 |
| Jul 2013 | NO RPT | | | | | | | | |
| Aug 2013 | NO RPT | | | | | | | | |
| Sep 2013 | NO RPT | | | | | | | | |
| Total | 214901 | 4216 | 110808 | 0 | 99877 | 0 | 0 | 0 | 0 |

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/17/2015 4:23:37 PM
KEITH E. HOTTLE
Clerk

Appendix H

Cause No. 13-04-00087-CVK

| | | |
|---|---|---|
| WEST 17TH RESOURCES, LLC, | § | IN THE DISTRICT COURT |
| PAMELA MIKA WOLF, & | § | |
| THOMAS MIKA, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 81ST JUDICIAL DISTRICT |
| | § | |
| LUCIAN A. PAWELEK & | § | |
| CARLEEN J. PAWELEK, | § | |
| Defendants, | § | KARNES COUNTY, TEXAS |

## FINAL JUDGMENT

On this day, the Court noted that the following Orders were each signed by the Court on June 24, 2014:

1. Order Denying Plaintiffs' Amended Traditional and No Evidence Motion for Partial Summary Judgment;

2. Order Granting Defendants' Traditional Motion For Summary Judgment, and

3. Agreed Order of Severance.

After reviewing said Orders, the Court finds that, after severance, those Orders dispose of all claims remaining in this Cause Number 13-04-00087-CVK against all parties in this Cause Number and is of the opinion that Final Judgment should be entered in this Cause Number 13-04-00087-CVK.

After reviewing Plaintiff's pleadings in this Cause Number, the Court finds that Plaintiffs asserted a Trespass to Try Title claim under and pursuant to Rules 783-809, Tex. R. Civ. P. in this Cause Number.

After reviewing the pleadings in this Cause Number, the Court finds that all parties describe the property at issue in this Trespass to Try Title claim as follows:

Being 290.69 acres of land, a part of the John J. Pickett Survey, Abstract No.

227, lying and being situated in Karnes County, Texas, about 10.7 miles Northeast of Karnes City, the county seat. The said 290.69 acre tract also being a part of that certain called 296.72 acre tract as described in a GIFT DEED from Mary Mika to Aloys Mika, et al, dated October 9, 1992, and recorded in Volume 639, Pages 124 et seq., of the Official Records of Karnes County, Texas.

(herein referred to as the "Property"),

IT IS THEREFORE, ORDERED, ADJUDGED and DECREED that Plaintiffs WEST17TH RESOURCES, LLC, PAMELA MIKA WOLF, & THOMAS MIKA take nothing from Defendants LUCIAN A. PAWELEK and CARLEEN J. PAWELEK.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs WEST17TH RESOURCES, LLC, PAMELA MIKA WOLF, & THOMAS MIKA are divested of any right, title, interest or claim to title to the Property and that right, title and interest to the Property shall be delivered to and vested in Defendants LUCIAN A. PAWELEK and CARLEEN J. PAWELEK.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendants LUCIAN A. PAWELEK and CARLEEN J. PAWELEK shall have writ of possession to the Property and shall be allowed all other writs of process, possession and other orders necessary to and consistent with this Final Judgment.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs WEST17TH RESOURCES, LLC, PAMELA MIKA WOLF, & THOMAS MIKA shall pay all taxable court costs in this Cause Number expended. If taxable costs are not timely paid, let all proper writs and process issue for its collection.

All relief sought in this Cause Number which is not expressly granted herein is hereby denied. This judgment finally disposes of all parties and all claims and is appealable.

SIGNED on this the 28 day of August , 2014.

_____
Judge Donna S. Rayes

APPROVED:

RICARDO E. MORALES
State Bar No. 00794331
Person, Whitworth, Borchers & Morales, L.L.P.
Post Office Drawer 6668
602 E. Calton Road
Laredo, Texas 78042-6668
(956) 727-4441
(956) 727-2696 (fax)
remorales@personwhitworth.com

AND

MICHAEL R. HEDGES
State Bar No. 09370200
Goode Casseb Jones, Riklin Choate & Watson, P.C.
2122 N. Main Avenue
P.O. Box 120480
San Antonio, Texas 78212-9680
(210) 733-6030
(210) 733-0330 - Fax
Hedges@goodelaw.com

ATTORNEYS FOR DEFENDANTS

APPROVED AS TO FORM ONLY:

MICHAEL D. JONES
Jones & Gill L.L.P
State Bar No. 109209360
6363 Woodway, Ste., 1100
Houston, Texas 77057
Phone : (713) 652-4068
Fax: (713) 651-0716

ATTORNEYS FOR PLAINTIFFS